## Holmes v. Boydston.

1. PRACTICE: *Depositions* taken in a cause instituted by one plaintiff with whom others are afterwards joined, may be read in evidence, if applicable to the case, after the amendment as to parties.

2. EVIDENCE: The owners of a mill, in their contract for the erection therein of the machinery, agreed to have their building ready for setting the same up by a certain day, and the parties furnishing the machinery agreed to have it up by a day also limited. The owners not being ready when they were required to be, and thereby greatly delaying the work of putting the machinery in, were not permitted to show what their mill would have earned from the time the machinery was to be in, had it then been ready to run.

3. ——: *The value of services* cannot be shown by proof of what was paid therefor, but only by proof of what they are worth.

4. DAMAGES *for breach of a contract* or machinery, sustained by reason of furnishing imperfect articles, cannot be shown by proof of what the party to whom the same were furnished actually paid for replacing them with such as the contract required.

5. ——: ——. The true rule is, the difference between the value of the machinery furnished and what it would cost to replace the same with such as was demanded by the contract.

6. CHARGE TO JURY: *Unsupported by evidence.* It is error for the judge to instruct the jury that they will not find for a party a certain sum claimed by him, unless the claim therefor has been assigned to him, when there is no evidence whatever of any assignment.

This action was originally brought in the District Court for Otoe county, by Arba Holmes, against Boydston and Heth, defendants, upon a contract entered into by the parties, whereby Holmes, Gould & Co., agreed to furnish the material and put up the machinery in a mill for defendants, for the sum of five thousand five hundred dollars. To the petition of the plaintiffs the defendants filed an answer. While the cause was in this situation depositions of witnesses were taken.

On the 23d of September, 1869, the defendants moved the court for an "order requiring Delos N. Gould and Ed-

ward Powell, who were members of the late firm of Holmes, Gould & Co., to be brought into court and made parties to the suit, for the reason that a complete determination of the controversy of the questions involved and at issue in this cause could not be had without the presence of said Gould and Powell as parties to the suit." The motion was sustained by the court; and at the December term, 1869, on motion to the court, leave was granted plaintiff to amend the petition and to make Gould and Powell also parties plaintiff with Holmes. December 27th, 1869, the new petition was filed, making Holmes, Gould & Powell parties plaintiff. This petition set forth the substance of the contract, alleged performance on the part of plaintiffs therein, claimed for extra work, and showed that the delay in the time of performance was occasioned by reason of the failure of performance on the part of the defendants of conditions precedent to be performed on their part and alleged non-performance on part of defendants, and asked judgment for the balance, to wit: For $1,887.31 balance on contract, and $436.45 for extras, making in the aggregate $2,323.76 claimed to be unpaid and due to plaintiffs. January 5th, 1870, defendants filed their answer to this petition, to which answer a replication was filed. The issues being thus joined at the same December term, the cause was tried before a jury who rendered a verdict in favor of plaintiffs for $1,747, upon which judgment was rendered.

On the trial the depositions taken in the cause when Holmes stood on the record as the sole plaintiff, were read under the defendan'ts objection.

A motion for new trial was made by defendants and overruled by the court. They thereupon brought this petition in error.

*I. N. Shambaugh* and *John H. Croxton*, for plaintiffs in error, among other points argued the following:

III. The evidence offered by defendants as to the extra hauling and boarding of plaintiff's hands by the defendants, should have been admitted. The contract entitled defendants to pay for the same. The court erred in its construction of the contract. Construction of contract is in favor of covenantee.—*Marvin* v. *Stone*, 5 *Cow.* 781; *Waterman on New Trials*, 824.

IV. The evidence offered by defendants as to the value of the use of the mill from the time it ought to have been completed until it was turned over to them, ought to have been admitted; also the evidence as to the damage of defendants by reason of the mill not being completed according to contract.

These were not speculative profits, but direct damages sustained by the plaintiff's failure to complete the mill according to the contract.—*Sedgwick on Damages*, 225. *d. note* 2, 233, *note* 1, 14 *Barbour, N. Y.*, 611; 2 *Md.* 597; 8 *Exch.* 401; 1 *Smed.* 622.

V. The defendant's objection to the question asked by plaintiffs of the witness Boydston, on cross-examination, as to his conversation with Hayward; should have been sustained. Such evidence was collateral, immaterial and irrelevant to the issues and could not be made the ground of contradiction.—*See* 1 *Greenleaf on Evi.* sec. 449, *and note* 6, 1. *Starkie on Evi.* 189 *and notes.*

VI. The court erred in admitting the evidence of the witness Hayward, to contradict the answers of Boydston, on cross-examination. The plaintiffs having interrogated Boydston upon a matter which was collateral, immaterial and irrelevant to the issues, they were bound by his answers and could not bring witnesses to contradict him.— *See* 1 *Greenleaf on Evi.* sec. 449, *and note* 6. 1 *Starkie on Evi.* 189 *and notes.*

VII. The evidence of Pinney was improperly admitted. It does not appear when he saw the mill.

HOLMES v. BOYDSTON.

VIII. The first and second instructions given by the court on motion of the plaintiffs, were manifestly erroneous. The first instruction assumes a fact which was denied by all the witnesses on both sides. The measure of damages laid down in the second instruction, was erroneous.—*Sedgwick on Damages*, 225, *note* 2, 233, *note* 1; 14 *Barbour*, (*N. Y.*) 611; 8 *Exch.* 401; 1 *Smed.* 622; *Hopkins* v. *Lee*, 6 *Wheaton*, 109.

IX. The fourth and fifth instructions asked by defendants should have been given. They laid down the law correctly. The instructions substituted by the court were erroneous. The contract required the plaintiffs to furnish all machinery and complete the mill without extra charge.

The seventh instruction asked by defendants was correct and should have been given as asked. The qualification added by the court assumes a fact which was not proved and which was denied by all the witnesses.

The eighth instruction asked by defendants should have been given. The qualification added by the court was not supported by any evidence.

There was no evidence that the item of $40, claimed to be due, Powell had assigned to the plaintiffs.

*D. Gantt* and *C. W. Seymour*, for the defendant in error.

The first and second errors assigned, relating to the admission in evidence of the depositions of Stewart, Bradford & Gould, are based alone on the objection that "because the same were not taken in this cause." As the filing of the amended petition is not the commencement of another action, but is a continuance of the same cause, relating to the same subject matter, the fact is clear that these depositions were taken in this cause. And no objection to their admission, except the one made in the court below, can now be interposed.—*Wesley* v. *Noonnan*, 31 *Miss.* (2 *Geo.*), 599.

HOLMES v. BOYDSTON.

It seems that a deposition in a former cause, relative to the same question between the same plaintiffs and a co-administrator of the defendant, is evidence.—*Bondereau* v. *Montgomery*, 4 *W. C. C. R.*, 186 ; See also *Carpenter* v. *Graff*, 5 *S. & R.*, 162 ; *Vincent* v. *Huff*, 8 *Id.*, 381 ; *Smith* v. *Lane*, 12 *Id.*, 80.

And again, if the evidence is sufficient without the deposition, it is immaterial whether it should have been suppressed or not.—*Billingsley* v. *State Bank*, 3 *Ind.*, 375.

II. The third error assigned for sustaining the objection to the question asked Shatzer as to when plaintiffs were ready to go out to work ; the fourth and eighth to rejecting evidence as to board of hands and hauling ; the fifth for rejecting evidence of profits of the mill, and the sixth rejecting evidence of damages sustained by defendants ; all involve a proper construction of the written contract, and the proper application of principles relating to performance and non-performance of contracts, and therefore the questions raised by these errors will be considered together. By the terms of the contract, Boydston & Heth agreed "*to have the mill in which the machinery is to be erected complete with floors and stairs ready for the machinery by the first day of July*, 1868,"—"*to do, or have done*, ALL THE HAULING *of said machinery*, and such lumber as is necessary for the completion of the work,"—and "*to board the hands that Holmes, Gould & Co. furnish to put up said machinery while at work at the mill*." The defendants did not have the mill ready with floors and stairs complete by the first of July, 1868, for the machinery, and did not have the same complete until some three months thereafter, and therefore utterly failed to perform the conditions precedent on their part to be performed, before the erection of the machinery by the plaintiffs.

Powell testifies that he "went out to the mill to put up the machinery for the first time on the 22d of August, 1868,

HOLMES v. BOYDSTON.

The roof of the mill was not then on. The defendants said, after I should have been at the mill, that it wasn't ready at that time; they were disappointed about getting their stone work done. Before they had the floors and stairs all in, I think I must have been there a month or more; they didn't have the work all done at the time of the election in October, 1868."

Holmes testifies that "about the middle of July, 1868, Boydston was in the office, in Nebraska city, to get hands to put up the building of the mill."

Douglas testifies that at the time, to wit, the 22d of August, 1868, "the lower floor was partly laid, the upper was not," and Shatzer says "the first floor was then half laid."

A party cannot take advantage of the non-performance of a condition in a building contract where such non-performance has been caused by himself, and he cannot complain of the other until he has put him in default by a substantial performance on his own part, and then a failure or refusal to perform on the part of the other. The defendants having so utterly failed to have the mill ready for the machinery until a long time after the time stipulated, they cannot take advantage of their failure, and therefore the court properly rejected evidence of damages by reason of delay in the completion of the work.—*Smith* v. *Gugerty*, 4 *Barb.*, 614–21; *Brown* v. *Cannon*, 5 *Gilm.*, 174; *Resinger* v. *Cheney*, 2 *Id.*, 84; *Chapin* v. *Norton*, 6 *McLean*, 500; *Caldwell* v. *Blake*, 6 *Gray*, 402–9; *People* v. *Bartlett*, 3 *Hill*, 571.

Where a piece of work is to be done within a certain time, if the contractor fail to do it within the time, but is permitted to go on and finish it afterward, and the work is accepted, he may recover the price.—*Cassady* v. *Clarke*, 2 *Eng.*, 123; *Conrad* v. *Griffey*, 11 *How.* 479; *Taylor* v. *Williams*, 6 *Wis.*, 363; *Nebbe* v. *Braughn*, 24 *Ill.*, 268.

HOLMES v. BOYDSTON.

The construction of a written agreement is the province of the court, and it is of the utmost importance that this province should not be invaded by the jury.—*Welch* v. *Dawson*, 3 *Binn.* 337 ; *Denison* v. *Wertz*, 7 *S. & R.* 372 ; *Moore* v. *Miller*, 4 *Id.* 279 ; *Collins* v. *Banbury*, 5 *Iredell*, 118.

The defendants agreed to do all the hauling and board the hands of plaintiffs. This is the contract, and the defendants are bound by it. Hence, the court properly rejected evidence of cost of hauling and boarding of hands. "Parties making a written memorial of their contract have implicitly agreed that in the event of any misunderstanding, that the writing shall be referred to as the proof of their act and intention."—2 *Phil. Ev. top p.* 558, *margin* 665, *note* 494.

In the construction of agreements, the plain, ordinary and popular sense of the terms used should prevail.— *Hawes* v. *Smith*, 3 *Fairf.* 429 ; see *Rogers* v. *Kneeland*, 13 *Wend.* 120 ; *Mason* v. *Rowe*, 16 *Verm.* 525.

3. The seventh, ninth, eleventh and twelfth errors assigned, all relate to the admission of evidence to discredit the witneesses, Hincks and Boydston, and therefore the questions raised by these errors will be considered together. Great latitude of examination may be permitted, arising from the disposition, temper and conduct of the witness, which can only be regulated by the discretion of the court.—*Lawrence* v. *Barker*, 5 *Wend.* 305 ; see *Atwood* v. *Weston*, 7 *Conn.* 66–70 ; *Cameron* v. *Montgomery*, 13 *S. & R.* 132 ; *Starks* v. *People*, 5 *Denio*, 108 ; *Newton* v. *Harris*, 2 *Seld.* 346 ; *Brewer* v. *Crosby*, 11 *Gray*, 29, 30 ; 2 *Phil. Ev. top page* 812, *margin* 971.

The judge, in the exercise of a sound discretion, may rightly permit an inquiry of a witness for reasons why he did certain acts, to test his accuracy of recollection, or affect his credibility, although it may have no direct tendency to

HOLMES *v.* BOYDSTON.

support or disprove the issue.—*Gloucester* v. *Bridgham,* 28 *Maine* (5 *Shep.*) 60.

May discredit a witness on the ground that he has corrupted, or endeavored to corrupt, another person to give false testimony, or done acts to procure persons corruptly to give evidence, etc.—2 *Phil. Ev. top page* 804, 5, *margin p.* 962.

" On the trial of Lord Stafford (7 *How. St. Tr.* 1400), proof was admitted on part of the prisoner, that Dugdall, one of the witnesses for the prosecution, had endeavored to suborn one of the witnesses to give false evidence.—2 *Phil. Ev. top page* 811, *margin* 971 ; *Morgan* v. *Frees,* 15 *Bark.* 352.

4. The thirteenth assignment is an alleged error of the court in giving the instructions to the jury asked by plaintiff; and the fourteenth is for refusing to give the fourth, fifth, seventh and eighth instructions in the form asked by defendants.

The first instruction asked by plaintiffs, submit wholly to the jury the finding of a certain state of facts, and that if the jury believe from the evidence such state of facts exist, then they may find the defendants accepted the mill and machinery and discharged the plaintiffs from all claims of damages.—*Taylor* v. *Williams,* 6 *Wis.* 363.

The substance of the second instruction, asked by plaintiff, is embodied in the first instruction asked by defendants, and the court answered both correctly.

The fourth, fifth and eighth instructions asked by defendants refer exclusively to extra work for which plaintiffs claimed pay. Although the slight modifications of these three instructions were correctly made by the court, yet, if it were otherwise, the defendants have no ground of complaint, for the verdict clearly shows that the jury gave plaintiffs no allowance for extra work.—*Huff.* v. *Earl,* 3 *Ind.* 306 ; *Eldred* v. *Hazlett,* 38 *Penn.* 16.

And it is not necessary that a proposition put by counsel should be answered in the words ; nor is it error that several points were answered collectively, relating to the same matter.—*Geiger* v. *Welsh*, 1 *R.* 349 ; *Coates* v. *Roberts*, 4 *Id.* 100.

The modification made by the court to the seventh instruction, asked by defendants, was proper, and submitted wholly to the jury to find whether or not, upon the evidence, the defendants accepted the machinery and workmanship thereon, in fulfillment of the contract ; and that if the jury were satisfied from the evidence such was the fact, it would bar any claim by plaintiffs for damages, for defects, or inferiority in the machinery or workmanship. This was a fair submission of facts to the jury.

CROUNSE, J.

On the trial of this cause in the District Court several exceptions were taken to the allowance and rejection of testimony, as well as to the charge of the judge, the more important of which will be noticed.

The action was originally begun by Arba Holmes as sole plaintiff. Subsequently, by an order of the court, Gould and Powell, his former partners, were joined with him. Exception was taken to the reading of certain depositions taken in the cause prior to this amendment as to parties. The testimony taken in the depositions related to the value, in Chicago, of certain burr millstones, and was alike applicable to the case after, as well as before the amendment, and there is no substantial reason for excluding the deposition.—*Vincent* v. *Conklin*, 1 *E. D. Smith*, 203.

By the terms of the written contracts under which the plaintiffs below were to furnish the machinery and place the same in the mill building of the defendants, the defendants were to have the building completed, with floors and

stairs ready for the machinery, by the first day of July,
1868.   When the plaintiff closed his testimony, it clearly
appeared that the building was not completed till long
after the first of July, and that the defendants told Powell,
one of the plaintiffs, that they were disappointed in getting
the stone work done ; that the plaintiffs had been there a
month or more before the stairs and floors were all in ;
that not until the election in October was the mill building
completed, and that the plaintiffs got the mill running by
the last of November, or the early part of December.
With a view, no doubt, to establish a claim for damages
for not having the machinery put up by the first day of
September, as required by the contract, among the first
questions asked by defendant's counsel was : " When were
Holmes, Gould and Powell first ready to go to Boydston
and Heth's mill with the machinery, and to put it up ?"
The question was excluded, the court remarking that under
the contract and the case as then made, the defendants were
not entitled to show what the mill might have earned if
running by September first.   This is correct.   As the case
then stood, the defendants appeared as having failed to
complete the building till a month or more after the time
even when the machinery was to be in.   They could not
lay a foundation for damages upon their own wrong.
Until this showing of the plaintiffs was questioned and a
foundation laid, the court was right in excluding this testi-
mony as immaterial.

Further along in the course of the trial the defendant's
counsel asked of a witness : " What would have been the
average profit of that mill, fully completed according to
contract, from the first day of September to the time when
the plaintiffs turned the same over to the defendants ?"
This was objected to " as incompetent on the ground that
it was immaterial under the written contract offered in
evidence."   With the written contract requiring Holmes,

Gould & Co. to have the machinery in running order by September first, I cannot understand the force of this peculiar objection. But as being wholly immaterial in the case as then made, the court correctly rejected it, as it might have done on his own motion in accordance with the prior holding, the case remaining unchanged with respect to the defendant's failure to have the mill in readiness for the machinery.

Again, a witness is asked by the defendant's counsel, "How much did the defendants pay for hauling machinery from the mill back to the foundry to be finished and completed, and for hauling the same from the foundry to the mill the second time?" The question was asked for the purpose of establishing a claim for extra hauling done by the defendants in taking a shaft back to the foundry to be refitted. Without stopping to inquire whether, under the plain terms of the contract, wherein they obligate themselves "to do or have done all the hauling of said machinery as is necessary for the completion of the works," they could make any charge for extra hauling, it is enough that proof of what they may have paid for such hauling is not evidence of its value. They could, in any event, claim only what such labor was worth. What was paid might be more or less. The court was right in sustaining the objection.

The same may be remarked in reference to the ruling upon the question as to "what was paid" for extra board of hands employed in replacing imperfect machinery.

I come next to consider the exceptions taken to the charge of the court. The first is to that which instructs the jury: "That the rule of law in the assessment of damages in such cases as the present one, is the difference between the value of the machinery actually put in by the contractors, and the actual cost of the new machinery put in place of it." Here the court erred. No question was

HOLMES *v.* BOYDSTON.

made by the defendants upon the trial below against the right of the plaintiffs to recover anything because of a failure to comply with the contract, but it was contended that such recovery must be subject to any claim for damages arising from the failure of the plaintiffs to put the quality of machinery and work in, and do it in the time required by the contract. It was the duty of the jury first to determine whether the machinery and work put in the mill was such as was called for by the contract. Finding that it was not, as seems clearly to appear from the evidence, it is wholly immaterial what character or grade of machinery the defendants' fancy or circumstances, may have led them to substitute in the place of it. The court improperly assumed that the machinery put up by the defendants was such as the plaintiffs were obligated to put in in the first instance. This was a matter for the jury to determine, and even had they concluded that it was such as the plaintiffs were to put up under their contract, they were improperly directed to consider its "actual cost" in reaching their estimate of damages. The use of the words "actual cost," in this particular connection, would imply what was paid for the new machinery. That, as I took occasion to remark in another connection, is not conclusive evidence of its value. It may have been more or less than its true value. The defendants were entitled to have such machinery and work as was specified in the contract. If that which was put in was inferior in respect to that, the defendants were entitled, as damages, to the difference between its value and what it would cost to replace it with such as was demanded by the contract. The court was asked by the defendant's counsel to charge that "if the jury believe from the evidence that the item of forty dollars, charged in plaintiff's bill of extra work for elevator, &c., was a private matter between Powell and these defendants, then these plaintiffs cannot, in this action, be

allowed said item." The court refused to charge as requested simply, but added thereto, "unless the same has been assigned to these plaintiffs." Powell, one of the plaintiffs testifying in behalf of plaintiffs, enumerated this among other items for extra work. Subsequently he testified that "the forty dollar item in our bill of extras for pulleys, &c., for elevator, was a private bill between defendants and me alone." This is all the testimony relating to this item, one of the plaintiffs testifying that the bill for this item was due to him individually, with no word of evidence showing that he had ever assigned or transferred this claim to the plaintiffs. Under this proof it was the duty of the court to give the instruction as asked, and without qualification. To qualify it as was done, was calculated to raise an inference in the minds of the jury that the account had been assigned. It is error for the judge to leave the jury to infer a fact not warranted by the evidence.—12 *Barb.* 84 ; 1 *Wend.* 50 ; 1 *Denio*, 583 ; 15 *N. Y.* 524.

Without noticing other points raised, the judgment must be reversed and a new trial had.

Reversed and remanded.