UNION PACIFIC RAILWAY, PLAINTIFF IN ERROR, V. LYULPH OGILVY, DEFENDANT IN ERROR.

1.  **Appeal from County Court:**  AMENDMENT OF PETITION. Where an action was brought in the county court to recover $990, and on appeal to the district court the petition was amended to claim $1,380, and judgment rendered for that sum, *Held,* That the petition could not be amended to claim more than $1,000, and accrued interest, being the limit of the civil jurisdiction of the county court.

2.  Instructions must be applicable to the testimony, and must be restricted to the actual questions at issue.

3.  An Instruction upon a material point which is not based upon evidence, tends to obscure the real issue, and is erroneous.

ERROR to the district court for Lincoln county. Tried below before HAMER, J.

*A. J. Poppleton* and *J. S. Shropshire*, for plaintiff in error.

*Neville & Heist*, for defendant in error.

MAXWELL, J.

This action was brought in the county court of Lincoln county by the defendant in error against the plaintiff to recover the sum of $990.00 damages, for injury to and killing twelve head of horses and mules by a train of the plaintiff. An appeal was taken to the district court from the judgment of the county court, and the plaintiff below thereupon amended his petition claiming damages therein in the sum of $1,380. The answer of the railroad company consists of certain denials of the facts stated in the petition, and an allegation of contributory negligence on the part of the plaintiff below. On the trial of the cause the jury returned a verdict for $1,380.00, upon which judgment was rendered.

The first objection of the plaintiff in error is to the amendment of the petition beyond the jurisdiction of the county court, which is limited in civil actions to sums not to exceed $1,000. The rule is well settled that if the court in which the action is brought has no jurisdiction of the subject matter, the appellate court will acquire none by the appeal. *Brondberg v. Babbott*, 14 Neb., 517. *Cooban v. Bryant*, 36 Wis., 605. *Stringham v. Board of Supervisors*, 24 Id., 594. *Felt v. Felt*, 19 Id., 208.

*Malone v. Clark*, 2 Hill, 657.   *Stephens v. Boswell*, 2 J.
J. Marsh, 29.   And this, too, even if the appellate court
would have jurisdiction of the subject matter had the
action been commenced there.   The reason is, an appeal is
a mere continuation of the original case, a proceeding in
the action.   *Aulanier v. Governor*, 1 Texas, 653.   *Hough
v. Leonard*, 12 Ill., 456.   *Hatch v. Allen*, 27 Me., 85.
The want of jurisdiction of the subject matter in the court
where the action was brought continues in every court to
which the action may be appealed, for the reason that it is
the same action, and an appeal is authorized only where
the court from which the appeal is taken, in case of the
failure to appeal, would have authority to enforce its
judgment.   It will not be claimed that the county court
of Lincoln county could render judgment for more than
$1,000.   That is the limit of its jurisdiction.   Comp.
Stat., Chap. 20.   The plaintiff below, in bringing his
action in that court, well knew that in no event could
he recover a greater sum.   This was the limit of the
power of the court.   When appealed, therefore, it is the
same case, and to be tried upon substantially the same
issues as in the county court.   If this were not so all
actions might be brought in the county court or before a
justice of the peace, and upon appeal to the district court
the real cause be stated and tried.

To call such a proceeding an appeal would be an incor-
rect use of language, and the proceeding itself the abuse
of a right.   We hold, therefore, that the power of amend-
ment of the appellate court is limited to the highest sum
which the court from which the appeal was taken was
authorized to render judgment, and accrued interest.

2.   The testimony shows that on the morning of the
11th of March, 1884, one Louis Bryant left North Platte
with about 60 head of mules and ponies belonging to the
defendant in error, intending to drive them to an irrigat-
ing ditch then being constructed at or near O'Fallons.

The public road on which he was driving these animals for several miles west of North Platte runs north of and nearly parallel with the Union Pacific Railway.   From four to six miles west of North Platte—the exact distance does not appear, a stream of water (called a slough in the testimony) crosses the railway and public road.   There was no bridge over this stream on the line of the public road, and on the morning in question the stream was covered with ice, the character of which does not appear.   The stream crosses the railway a few rods west of the point where it crosses the public road, and there was also a ditch $2\frac{1}{2}$ feet wide, filled with water, between the public road and the railway.   The stream or slough at the point where the public road crosses it is forty-two feet in width.   This stream, the map introduced in evidence shows, flowed north of and nearly parallel to the public road for some distance east of the point of crossing.   Bryant seems to have had no trouble in driving the animals in question, but when near the point of crossing,—the exact distance does not appear,—on looking back he saw a freight train going west on the railroad at a speed of fifteen to eighteen miles per hour, the train being less than half a mile away.   To this point there is no material conflict in the testimony. In regard to what was done by Bryant upon seeing the train there is a conflict.   Bryant testifies that the mules refused to cross the ice and the drove split in two, part going upon the railroad track, and that he followed and got ahead of them to drive them off, but that he was unable to do so because of the approach of the train.   Mr. Brown, the fireman on the engine, testifies :

" We were about a mile from the mules when we first saw them ; Mr. Crusen, the engineer, asked me what they were, I told him I thought they were mules that belonged to the ditch company ; as soon as the man that was with them saw us he started up on the outside of them and rushed across the track just ahead of the engine."

Q. Did you see him rush up on to them with his whip?

A. I saw him ride up on the outside of the herd and whip his horse up.

Q. Did the head end of the train of mules start for the track before he commenced whipping them up?

A. No, sir, it was after.

Q. About how far behind the mules was the engine when he commenced to whip them up?

A. I could not say; I should judge about fifty yards.

Q. You saw them as they started for the track?

A. Yes, sir.

In this he is substantially corroborated by the engineer. When the mules and ponies reached the track the testimony shows that the engine was but a few yards from them. The engineer then reversed his engine, put on a full head of steam, and sand on the track, and brought the train to a stop a few rods beyond where the injury occurred. There is considerable testimony in the record tending to show that Bryant was intoxicated at the time the injury occurred. Upon this and other testimony of like nature the court instructed the jury as follows:

"That the plaintiff, by his employe, was driving the mules and ponies near the railroad track cannot of itself be regarded as negligence or carelessness for which he was in any degree responsible. It was his right to drive along the highway or to let his mules and ponies run at large near the defendant's railway track, and if any of the animals so driven accidentally strayed upon the track, because it was not fenced, and without fault of the plaintiff in driving them there, were killed, then the defendant company is liable; but if the plaintiff, by his employe, drove the animals upon the track in front of an approaching train, either carelessly, negligently, or willfully, and the train ran upon them and injured or killed them or any of them, in spite of the efforts of the engineer and others in charge to clear the track and stop the train, then the company is not

liable. In other words, if the injury and death of the stock was owing to the plaintiff driving it on the highway near the track, and the stock then going upon the track because it was not fenced, the death and injury would seem to be the direct result of the company neglecting to fence its track, and it is proper the company should pay for the consequences of such negligence, but if the plaintiff was driving the stock near the railroad, and a train was approaching, and plaintiff negligently, carelessly, or willfully drove the stock on the track, and it was then run over and injured and killed, the injury and death would seem to be not the immediate result of the company neglecting to fence, but the immediate result of plaintiff driving it upon the track."

It will be observed that the jury were told that it was the right of the plaintiff " to let his mules and ponies run at large near the defendant's railway tracks." This would have been proper if there had been testimony tending to show that the animals mentioned were running at large, but there was none. The object of instructions is to enable the jury to apply the law to the testimony in the case, and so determine the rights of the parties. The law, as stated by the court in the instructions, must be applicable to the testimony, or it can scarcely fail to mislead the jury; and particularly is there great danger of this in cases where the right to recover depends upon the conduct of one or both of the parties. Where an instruction is given which assumes the existence of certain facts not in evidence, the effect usually is to convince the jury that in the opinion of the judge there is testimony upon the points named, hence the real issue is obscured or lost sight of, and an erroneous verdict is the result. In a number of cases this court has held that it was error to give an instruction where there was no evidence to base it upon. *Holmes v. Boydston*, 1 Neb., 346. *Walrath v. State*, 8 Id., 91. *Smith v. Evans*, 13 Id., 316. *Steele v. Russell*, 5 Id., 216. As there was no evidence upon the point named, the instruction in ques-

tion was erroneous, and evidently prejudicial to the plaintiff in error. There were other instructions given and refused, to which it is unnecessary to refer. We adhere to the former decisions of this court as to the liability of a railway company, under the statute (Comp. Stat., Ch. 72), in case of a failure to fence its track; but that question, on the testimony in the record, is not involved in this case, and, in any event, each party is entitled to a fair submission of the case to the jury. The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.