THOMAS BRYANT, APPELLEE, V. EXPERIENCE ESTABROOK, APPELLANT.

1. **Judgment**: RECORD: NOT OPEN TO COLLATERAL ATTACK. The record of a judgment regular on its face, in a case of which the court rendering it had jurisdiction, imports absolute verity until modified or reversed in a direct proceeding, and cannot be attacked collaterally. Such record may be made up in an action in the nature of an action of ejectment, upon the first trial, unless the losing party shall, during the term, apply to have the verdict set aside and a new trial.

2. **Taxes**: TAX DEED: ACTION. If it were necessary that a holder of a tax title go into a court of law and have his title declared void before instituting proceedings to foreclose, a general judgment against the plaintiff in an action in the nature of an action of ejectment would be sufficient.

3. **Ejectment**: FINAL JUDGMENT. After the adjournment of the term a judgment on the first trial, in an action in the nature of ejectment, is final.

4. **Taxes**: CERTIFICATE OF PURCHASE: EVIDENCE. Under the revenue law of 1869, the certificate which the purchaser of lands sold for delinquent taxes is entitled to receive, from the county treasurer, is presumptive evidence of the regularity of all prior proceedings, including the assessment, equalization, levy, advertisement, sale, and payment of purchase money, and when there is no question of the genuineness of such certificate, its recent custody is not material.

5. ————: REDEMPTION: NOTICE: CONSTITUTIONAL LAW. Under the provisions of section 3, article 9, of the constitution, it is not necessary to serve a notice on the defendant before bringing a suit to enforce a tax lien.

6. ————: LIMITATION AS TO FORECLOSURE OF LIEN. The statute of limitations commences to run on the right to enforce a lien for taxes when the title under the tax deed fails.

7. **Municipal Corporations.** The city of O. having been in fact laid out into lots, blocks, streets, and squares more than twenty-five years ago, during all of which time the same have been used, enjoyed, and the lots taxed as such, *Held*, That a decision of this court that such lots have no legal existence for the reason that no plat or map of said city has ever been filed or recorded, would be against public policy, and a discussion of authorities which might logically lead to such a decision, declared inexpedient.

| | |
|---|---|
| 16 | 217 |
| 16 | 297 |
| 16 | 397 |
| 16 | 449 |
| 20 | 345 |
| 21 | 83 |
| 21 | 183 |
| 16 | 217 |
| 35 | 304 |
| 16 | 217 |
| o43 | 497 |
| 43 | 687 |
| 16 | 217 |
| 48 | 316 |
| 16 | 217 |
| f49 | 470 |
| 53 | 570 |
| 16 | 217 |
| 56 | 521 |
| 16 | 217 |
| 61 | 643 |
| 16 | 217 |
| 62 | 250 |

APPEAL from the district court of Douglas county. Heard below before NEVILLE, J.

*E. & H. D. Estabrook,* for appellant, on first point stated by court in its opinion, cited : *Miller v. Hurford,* 11 Neb., 384. *People v. Auditor,* 30 Mich., 12. *Robbins v. Barron,* 34 Id., 517; and 32 Id., 36. *Weimer v. Porter,* 42 Id., 569. *Peet v. O'Brien,* 5 Neb., 360. Second point: *Louisville v. Bank,* 3 Met. (Ky.), 148. *Hooser v. Buckner,* 11 B. Mon., 183. Third point: *U. S. v. Freeman,* 3 How., 556. Fourth point: *Peet v. O'Brien,* 5 Neb., 360. 39 Wis., 444. 52 Iowa, 141. Fifth point: Cooley Taxation, 284. Burroughs Public Securities, 211. 63 Penn. State, 36. 2 Watts, 334. 58 Maine, 533. 60 Id., 27. 87 Ill., 353. 50 Mo., 198.

*John D. Howe,* for appellee, cited : Cooley Taxation, 258, 352. *Miller v. Hurford,* 13 Neb., 21. *Green v. Lunt,* 58 Maine, 518. *Lyman v. City,* 56 Penn. State, 488. *Stewart v. Shoenfelt,* 13 S. & R., 360. *Peet v. O'Brien,* 5 Neb., 360.

COBB, CH. J.

This action was commenced in the district court of Douglas county for the foreclosure of certain liens upon certain city lots of the defendant in the city of Omaha, which are claimed to have arisen upon the failure of the title acquired thereto by the plaintiff by and through certain tax deeds. There was a trial to the district court, and a decree entered in favor of the plaintiff. The defendant brings the cause to this court by appeal.

1. The first point made by appellant is that "Whatever title was acquired by the plaintiff has never failed."

In each of the three counts into which the plaintiff's petition is divided, we find the following clause in substance. I quote from the first count:

"And plaintiff further says that at the February term,

1879, of this court, in a suit after the above dates brought, wherein said plaintiff was plaintiff and the said Estabrook and others were defendants, it was by the consideration of said court finally adjudged and determined that said plaintiff had no title to said lot under said deed or otherwise, and that the same had failed, which adjudication was had at the February term of this court, 1879, and the plaintiff hereby waives all title and claim of title in or to said lot, saving his right to a lien as by law provided only, and plaintiff hereby offers to release and convey all title and claim of title to said lot to the defendant, or otherwise, as the court shall direct."

In the answer of the defendant we find in substance the following clause in answer to each of plaintiff's causes of action. I quote that intended to apply to the first cause of action:

"As to so much of said first count as is in these words, viz., (quoting the clause of the petition as above), defendant says that the same is untrue, and is therefore denied; but he says the plaintiff commenced a suit, in form as prescribed in chapter 1, title 18, of the code of civil procedure, alleging in his petition simply his ownership of the property in fee simple without disclosing the source or character of the title, which title was denied, that the cause was brought to a hearing before the court in the absence of the defendant, that a jury was impaneled merely as a matter of form, with the distinct understanding that they were to find for the defendant, that the plaintiff's counsel with that view and object prepared the form of the verdict, which they returned under instructions of the court without leaving their seats, simply saying 'We find for the defendants;' that no second trial was asked, and that the whole proceeding was a fiction, and was intended to present an apparent failure of title in order to lay a seeming foundation for proceedings to establish a lien, and no further or other proceedings were had touching said title."

I think the above a substantial admission of the facts set out in the petition. In so far as it is any thing else, it is an attack upon the records of the district court, which is not admissible in a collateral proceeding. Such records stand as a verity until modified or reversed in a direct proceeding for that purpose. While the losing party in an action for the recovery of real estate may have the verdict against him set aside, and a new trial at any time during the same term of the court at which the verdict is rendered, this is a privilege of which he is not obliged to avail himself, and after the final adjournment of the court for the term the record is as final and unassailable where there is but one as where there are two trials. It may be conceded that the sole object of the plaintiff in bringing the ejectment suit was that he might be unsuccessful therein, and thus lay the foundation of this action, and unless some fraudulent practice was resorted to by him, which is not claimed, it would amount to no defense to this action. That proceeding was had entirely at the expense of the plaintiff, and according to the defendant's testimony and that of his attorneys, it does not seem to have disturbed him much; and had he desired a different result, no doubt he could have had the judgment rendered against him instead of in his favor as it was.

The Michigan case cited by defendant seems to contemplate that in that state there was some form of action open to the holder of a tax title, by which it could be affirmed or annulled, other than one in the nature of an action of ejectment. Such may be the case there, but I am quite sure there is none in this state in a case where the holder of the tax title is out of, and the holder of the general title in possession. The language used by this court in the opinion in the case of *Peet v. O'Brien*, 5 Neb., 360, "When it shall be pronounced invalid by the judgment or decree of a court having jurisdiction over the subject matter," is sufficiently broad to cover the case of a general

judgment against the tax title holder in ejectment. Indeed, if I am right in the view expressed above, that no other action was open to the plaintiff by means of which he could have tested the said title, then it must have been a judgment in ejectment adverse to the tax title holder that the court had in view when it used the language above quoted. But this court held in the case of *Miller v. Hur-*. *ford,* 11 Neb., 377, a case quite similar to the case at bar, that "it seems unnecessary to require the purchaser to go into a court of law and have his title declared void before instituting proceedings to foreclose."

2. The second point is, that "the evidence introduced to establish a lien was incompetent, irrelevant, and immaterial, both as to the fact of assessment and payment."

The treasurer's certificates, twenty-three in number, signed by the county treasurer, whose signature was duly proved, were duly offered in evidence, received, and being copied at length in the record are believed to be in due form. Section 61 of the old revenue law, p. 921, Gen. Stat., provides that: "The purchaser of any tract of land sold by the county treasurer for taxes will be entitled to a certificate in writing, describing the land so purchased, the sum paid, and the time when the purchaser will be entitled to a deed, which certificate shall be signed by the treasurer in his official capacity, and shall be presumptive evidence of the regularity of all prior proceedings," etc. What are the prior proceedings? The assessment, equalization, levy, advertisement, sale, and payment.

Section 70 of the same act provides that: "When conveyances are delivered for lands sold for taxes, the certificate therefor shall be canceled and filed away by the county clerk," etc. But the admissibility of such certificate in evidence does not depend upon its being so filed away, and the question whether it was so filed away or not could only become important in case of a contest over the genuineness of such certificate. In this case their genuineness is not

disputed, and if it were it is amply proved. I do not. therefore see that the objection as to their custody can have any weight as against the plaintiff.

3. "There is no allegation or proof that the notice required by law has ever been given."

Section 3, of article IX. of the constitution, provides. that: "The right of redemption from all sales of real estate for the non-payment of taxes or special assessments of any character whatever, shall exist in favor of owners and persons interested in such real estate for a period of not less. than two years from such sales thereof; *Provided*, That occupants shall in all cases be served with personal notice before the time of redemption expires." I understand the above section to mean, in effect, that no one may be deprived of the right to redeem lands sold for taxes until. after the lapse of two years from the date of sale, and not then unless the notice is given to occupants, if any, of the lands; and I think it quite sufficient to say that it is not sought to deprive the defendant of the right of redemption,. but rather to urge him to avail himself of that right. I will add that the rights of the plaintiff in the case at bar,. whatever they may be, had fully accrued before the taking effect of the revenue law of 1879, and as this action was. not brought under the provisions of section 179 of that act. its provisions will not be further noticed.

4. "The lien for taxes outlaws in five years," etc.

This action was instituted under the provisions of the act of June 6, 1871, and in this connection it would be unprofitable to examine the provisions of the act of 1875, for the latter designated act expressly declares that it "shall be construed as cumulative and not exclusive in respect to the remedy for enforcing liens," etc. Neither is it deemed expedient to discuss the nature or origin of the lien which it is sought to foreclose in this case. It cannot be denied that under the statute the purchaser of lands at treasurer's. sale for delinquent taxes, whose title shall fail, has a lien,.

whether he has it before such failure of title or whether it is brought into being by such failure. It is equally clear that under the provisions of said act the failure of the title of the holder of such tax deed is a condition precedent to the exercise of his right to enforce his lien in a court of equity, and that a suit for such purpose began before such failure would be premature. And it is of the very nature and essence of a statute of limitations that it commences to run in a given case only when an action could be commenced thereon. To this point appellant cites the case of *Peet v. O'Brien, supra.* I have carefully examined that oft-cited case, and find nothing in the opinion inconsistent with what I had supposed to be law applicable to cases under the statute now being considered, viz., that the statute commences to run upon the failure of title. Such was our holding in the case of *Merriam v. County of Otoe,* 15 Neb., 408. I see no reason to doubt the correctness of such holding.

5. "In legal contemplation there is no such property as described to which a lien for taxes could attach."

The foundation for this point is laid in the defendant's answer as follows: "That said lot one (1) in said petition described has no legal existence as therein set forth, and no plat containing or embracing any lot so described, and no plat or map of 'the city of Omaha' is anywhere recorded," and a similar clause as to each of the other counts. These clauses of the answer say in effect that the real property sought to be described in the petition has no legal existence, beaause no plat or map of the city of Omaha is anywhere recorded. The question thus presented is an important one and by no means free of difficulty. The authorities cited by appellant are not all one way, and yet it is perhaps fair to say that the weight of authority cited sustains his position.

But this court must take judicial notice of the public geography and history of the state. That the city of Omaha was in fact laid out in lots, blocks, streets, and

squares, and has been occupied and enjoyed as such for more than a quarter of a century; valuable and costly improvements, public as well as private, have been erected upon these lots, blocks, and squares, and some of these streets have been improved at great expense to the public; that an enormous amount of revenue for the support of the state, the county, the city, and the school district, has been raised by taxes levied on these lots. And for this court to now hold that these lots have no legal existence for the reason that no plat or map of said city has ever been recorded, would be to declare all taxes ever levied upon such property for any purpose, whether collected or uncollected, now being collected or just assessed for future collection, illegal, null, and void, would thus cut off the necessary resources of said city for years to come, and in my opinion be against public policy. And I do not feel justified to enter upon the discussion of authorities that might logically lead to that conclusion. Certainly it was some one's duty at one time to have recorded a plat of that part of the city where the property in question is situated, but that duty was neglected; and in this neglect individuals and the public have acquiesced for a generation. Its question at this late day, in the courts, cannot be entertained without the infliction upon the public of a wrong, beside which even the alleged wrong to the appellant by reason of the judgment in the court below, pales into insignificance. But it is idle to call that a wrong which is but an attempt to hold the appellant and his property to an equal and just participation in the burden of government, as they have participated in its protection.

No complaint is made of the amount of the finding in the court below. So it is presumed to have been for the money paid for the certificates with twelve per cent interest.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.