M. E. FULLER v. COUNTY OF COLFAX.

[FILED JANUARY 5, 1892.]

1. **Tax Sale:** LAND NOT TAXABLE: LIABILITY OF COUNTY. Where lands are sold for taxes, by a county treasurer, which are not subject to the taxation, the county is liable to the purchaser for the amount paid by him with interest. (*Roberts v. Adams Co.,* 18 Neb., 471; *Wilson v. Butler Co.,* 26 Id., 676.)

2. ———: ———: PRESENTATION OF CLAIM. In such a case the claim should be presented to the county board, and if rejected an appeal may be taken to the district court.

3. ———: ———: LIMITATIONS. The tax purchaser, who has neither demanded a deed within five years from the date of the sale, nor commenced proceedings to foreclose the tax certificate within the period of limitation for such actions, is not entitled to have the county refund the purchase money by reason of the invalidity of the tax sale.

4. **Amendment.** The second paragraph of the syllabus in *Alexander v. Wilcox,* 30 Neb., 793, corrected to read: A tax deed issued more than five years after the date of the tax certificate is invalid.

ERROR to the district court for Colfax county. Tried below before POST, J.

*H. C. Russell, E. T. Hodsdon,* and *R. M. Bashford,* for plaintiff in error.

*Grimison & Thomas, contra.*

Cases cited by counsel are, in the main, referred to in opinion.

NORVAL, J.

On December 11, 1888, the plaintiff presented to the county board of Colfax county a verified account of moneys claimed to have been paid by him to the county treasurer for the purchase of lands at tax sale, which were not liable for taxation. The account was disallowed by the county board, whereupon an appeal was taken to the district court, where the plaintiff filed a petition setting up sixty-one causes of action. The counts are alike, except in description of land, date, and amount.

The plaintiff for his first cause of action alleges:

"That on the first Monday of February, 1875, the county commissioners of said defendant did furnish to the assessor of Wilson precinct what purported to be a list of the lands in said precinct subject to taxation; that said list erroneously contained the following described lands, to-wit: South ½ section 1, town 19, range 2 east, of the 6th principal meridian, in Colfax county, Nebraska; that said assessor did value said lands at $520, and returned said valuation with other lands on the second Monday in April, 1875, to the county clerk of said defendant; that said county clerk extended the taxes of 1875 against the said lands as follows, to-wit, total, $67.20; that on the first day of May, 1876, said taxes not having been paid, the same became delinquent, and said lands were offered for sale by the treasurer of said defendant on the first Monday of September, 1877, but the said lands were not sold on that day for the want of bidders, and that on the 1st day of December, 1877, said plaintiff bought said lands of said treasurer at private sale for said delinquent tax of 1876, and paid said treasurer the sum of $69.79 therefor, that being the amount of taxes and interest claimed to be due

against said lands by the treasurer of said defendant; that there was no tax due against said lands at the time of said sale and purchase, for the reason that said lands at the time they were so assessed were lands belonging to the general government of the United States and were not liable to taxation; that said lands were wrongfully placed upon said tax list by said defendant's commissioners and wrongfully assessed by the assessor of said precinct, and were wrongfully sold by said defendant's treasurer, and it was by the wrongful act of said defendant's commissioners and said defendant's assessors and said defendant's treasurer that said lands were sold upon which no tax was due at the time; that on the 6th day of November, 1879, the Union Pacific Railroad Company commenced proceedings in the circuit court of the United States for the district of Nebraska to restrain the defendant's then treasurer, John Miller, from issuing and delivering a tax deed for the above described tract of land to the plaintiff, and did, on or about said last named date, obtain a restraining order therefor from said court; that said restraining order was issued by said circuit court upon a bill theretofore filed on behalf of said Union Pacific Railroad Company against said John Miller, the treasurer of Colfax county, which bill, among other things, alleged, in substance, that the lands above described were not properly and legally subject to assessment and taxation at the time said taxes were assessed and levied thereon, for the reason that said lands then belonged to the government of the United States, and that the taxes attempted to be levied thereon by the local authorities of said Colfax county were wholly illegal and void; and that for the same reason all the proceedings relating to the assessment and levy and collection of said taxes, including the sale of said lands by the county treasurer, as above set forth, were illegal and void, and that the purchaser of said lands at said sale acquired no title to or lien upon said lands by virtue of said sale by the county

treasurer; and that it was further alleged in said bill that
notwithstanding said proceedings for the assessment and col-
lection of said taxes and the sale of said lands were wholly
illegal and void, the holder of the tax certificates issued by
the county treasurer upon the sale of said lands for unpaid
taxes has done all that was required of him by law to do
to entitle him to tax deeds upon said lands, and that said
John Miller, as treasurer of said county of Colfax, was
about to issue such tax deeds to the holder of said certifi-
cates; that the answer to said bill filed in said suit in be-
half of said John Miller, treasurer of Colfax county, and
on behalf of said county, alleged in substance that said
lands were subject to taxation and were properly assessable
at the time said taxes were so levied and assessed thereon,
and that all the proceedings relating to the assessment
and collection of said taxes and the sale of said lands for
unpaid taxes, and the issue of certificates upon said sale
by said county treasurer, were regular, legal, and valid, and
that the holder of said tax certificates had acquired by
virtue of said tax sale a perfect title to said lands, and that
he had done all that was by law required of him to do to
entitle him to tax deeds upon said lands by virtue of said
certificates of sale, and that said John Miller, as such treas-
urer of Colfax county, was about to issue tax deeds upon
said lands to the holder of said certificates; that upon the
issues thus formed a hearing was had in said circuit court
for the district of Nebraska, which resulted in a decree in
favor of the said complainant, the Union Pacific Railroad
Company, and against the defendant, John Miller, as treas-
urer of said county of Colfax; that on the 25th day of
November, 1881, the said restraining order having been
continued in force from the issue thereof, on the 6th day of
November, 1879, the said circuit court of the United States,
by the final decree then entered in said suit, forever en-
joined and restrained the said John Miller, as such treasurer
of Colfax county, and his deputies and successors in office,

from issuing and delivering any tax deed or tax deeds to
the holder of said certificates, or from enforcing in any
way the payment of said taxes as against said lands or
from conferring any lien upon or title to said lands upon
the holder of said certificates; that from said decree to the
treasurer of Colfax county the successor of said John
Miller immediately took an appeal of said suit to the su-
preme court of the United States; that on the 18th day of
October, 1886, a final decree in said suit upon said appeal
was by stipulation of said parties rendered in said supreme
court of the United States, dismissing said appeal at the
cost of the said Union Pacific Railroad Company, the ap-
pellee therein; that the dismissal of said appeal operated
to continue in force the aforesaid decree of the circuit court
for the district of Nebraska, forever restraining the treas-
urer of Colfax county from issuing to the plaintiff a tax
deed or deeds upon the lands above described upon the
certificates purchased and held by him as aforesaid, although
the plaintiff, as the holder of said certificates, had done all
that was by law required of him to do, to entitle him to
said tax deed or deeds; that by reason of the premises set
forth as above the defendant became liable to this plaintiff
for the amount so paid by him as aforesaid, to-wit, the
sum of $69.79, with interest at the rate of twenty (20) per
cent per annum from the 1st day of December, 1877.

"That said defendant, the county of Colfax, received the
moneys so paid by the plaintiff as set forth in the aforesaid
causes of action upon the purchase of said lands at said tax
sale for unpaid taxes, and has ever since, and still does, re-
tain the same; that said defendant, the county of Colfax,
defended said suit against John Miller, treasurer of Colfax
county, brought in the circuit court for the United States
by the Union Pacific Railroad Company to enjoin the col-
lection of said taxes and the issue of tax deeds upon said
certificates as above set forth, and for that purpose em-
ployed counsel and paid from the county treasury all the

costs and expenses of said defense; that upon the expiration of the term of office of said John Miller, as county treasurer of Colfax county, said defendant, the county of Colfax, instructed his successor in office to continue the defense of said suit, and for that purpose to retain the services of counsel already employed; that the said successor of John Miller, as county treasurer, acting under the direction of said defendant, did continue and maintain the defense of said suit and the expenses thereof were paid by said defendant from the county treasury; that said defendant, the county of Colfax, was the real defendant in said suit; that it ratified and approved all the proceedings taken and had therein in the name of John Miller, as treasurer, and his successor in office, including the allegations contained in said answer, and the proofs that were adduced to support the same, and also the stipulation dismissing said appeal; that pending said action and during all the time from the commencement thereof on the 6th day of November, A. D. 1879, to the 18th day of October, A. D. 1886, the said defendant, the county of Colfax, through its commissioners and officers, affirmed and maintained that under the decisions of the supreme court of the state of Nebraska, the said lands so sold for taxes were subject to taxation, that said taxes as levied and assessed were legal and valid, that the sale of said lands for unpaid taxes and the issue of the tax certificates upon said sales and the certificates themselves were legal and valid in all respects, and that the plaintiff as the holder of said certificates was entitled to a deed to said lands from the said county of Colfax or its treasurer, and that the plaintiff as the holder of said certificates had done all that was required of him to do to entitle to him said tax deeds, and that the plaintiff's title to said land under said certificates had not failed, and that he was not entitled to have, receive, or demand from said defendant, the county of Colfax, the repayment of the moneys with interest thereon which he had paid

49

into the treasury of said county upon the purchase of said lands for unpaid taxes at the sale thereof by the county treasurer; and that said defendant, the county of Colfax, by reason of the premises is now estopped from asserting or setting up by way of defense to this action that the plaintiff's title to said lands had failed prior to the entry of the final decree in the supreme court of the United States dismissing said appeal on the 18th day of October, A. D. 1886, in the suit of the Union Pacific Railroad Company against John Miller, treasurer of Colfax county, as above set forth, or from asserting or setting up by way of defense to this action that the plaintiff's right of action against said county for the repayment of said moneys, as set forth in this petition, accrued prior to said 18th day of October, A. D. 1886, or from alleging or setting up by way of defense that the plaintiff, as the holder of said tax certificates, has not done all that was by law required of him to do to entitle him to tax deeds upon said certificates from the county of Colfax, or from setting up as a defense to this action that the plaintiff's title to said lands has not now failed."

To the petition the county interposed a demurrer, alleging the following grounds:

1. The court has no jurisdiction of the subject of the action.

2. The petition does not state sufficient facts to constitute a cause of action.

3. The several causes of action are barred by the statute of limitations.

The demurrer was sustained and the suit dismissed.

The action was brought under the provisions of section 131 of the revenue law, which provides that "When by mistake or wrongful act of the treasurer or other officer land has been sold on which no tax was due at the time, or whenever land is sold in consequence of error in describing such land in the tax receipt, the county is to hold

the purchaser harmless by paying him the amount of principal and interest and costs to which he would have been entitled had the land been rightfully sold," etc.

This section has been under consideration by this court in several cases, and by an unbroken line of decisions it is held that where lands are sold for taxes by a county treasurer, which are not subject to taxation, the county is liable to the tax purchaser for the amount paid by him, with interest thereon. (*Roberts v. Adams County*, 18 Neb., 471; 20 Id., 409; *Wilson v. Butler County*, 26 Id., 676.)

The correctness of these adjudications is not questioned, but it is contended by the attorney for the county that the petition does not aver that the county board ever made a levy of taxes against the lands, and that the sales are void for want of jurisdiction of the treasurer to make them, and hence the county is not liable. The objection that there is no averment of the levy of a tax, is not borne out by the record. The petition does allege, in effect, that the lands were assessed by the precinct assessor, although at the time they belonged to the United States and were not liable to taxation; that they were wrongfully placed upon the tax list of the county by the county commissioners and the county clerk extended the tax against the lands. This was sufficient.

The first ground of demurrer, that the district court had no jurisdiction, must be overruled. The plaintiff presented his account to the county board for audit and allowance. It being rejected, an appeal was taken and perfected, which conferred jurisdiction upon the court. The plaintiff's causes of action were claims against the county within the meaning of the provisions of section 37, chapter 18, Compiled Statutes. The method of procedure adopted by the plaintiff in presenting his account to the county board and, when disallowed, taking an appeal to the district court, is in line with our decisions in *Richardson County v. Hull*, 24 Neb., 536; 28 Id., 810.

Section 179 of chapter 77, Compiled Statutes, entitled "Revenue," prescribes the period within which an action to foreclose a certificate of tax sale must be brought, but neither the provisions of the section, nor the adjudications of this court thereunder, cited by counsel for plaintiff in error, which affirmed the doctrine that the statute of limitations does not commence to run against the right to foreclose a tax lien until the title acquired by the tax deed has failed, have any application to the question under consideration. No tax deed was ever issued to the plaintiff, hence, he never had any title to fail. Moreover, this is not an action to foreclose a tax lien, but one to enforce a claim against the county for taxes wrongfully levied and collected by it.

Section 126 of the same chapter confers authority upon the county treasurer to issue a tax deed, when the land has not been redeemed, at any time within three years after the expiration of two years from the date of the sale, on the return of the certificate of purchase, in case the purchaser has complied with the provisions of the three preceding sections of that law.

Section 180 declares that "If the owner of any such certificate shall fail or neglect either to demand a deed thereon or to commence an action for the foreclosure of the same, as provided in the preceding sections, within five years from the date thereof, the same shall cease to be valid or of any force whatever, either against the person holding or owning the title adverse thereto, and all other persons, and as against the state, *county*, and all other municipal subdivisions thereof."

It is plain that there is no authority to issue a treasurer's deed after the lapse of five years from the date of the sale, or three years from the expiration of the period fixed by law for the redemption from a tax sale, and when one is issued after time it is of no validity, and creates no lien. In the second paragraph of the syllabus and in the body

of the opinion, *Alexander v. Wilcox*, 30 Neb., 793, it was inadvertently stated that "A tax deed issued more than *five* years after the expiration for the time to redeem, is invalid." If the word "five" in the sentence read "three" the proposition would be correctly written, and in harmony with the letter and spirit of the statute which makes a tax deed invalid if issued more than five years after the date of the tax sale.

In the case in hand the lands were purchased by the plaintiff, and the money paid by him on two different dates, November 7 and December 1, 1877, and the certificates were issued by the treasurer on the day of the purchase, yet no deed was demanded or issued, and no action was ever brought to foreclose the certificates, but more than eleven years after their date the plaintiff for the first time asserts a claim against the county, by presenting to the county board his account for moneys paid for the tax certificate. There is no room to doubt that the plaintiff has failed to comply with the provisions of section 180, and the county is not under any legal obligation to reimburse him for the moneys so paid out. Unless the owner of the certificate either demands a deed thereon or institutes an action to foreclose the certificate within the period prescribed by the statute, the county is not bound to save him harmless. This is clearly the meaning of section 180. The judgment in the injunction suit brought in the United States court by the owner of the lands against the county treasurer, perpetually enjoining the issuing of deeds on the certificates cannot avail this plaintiff. Not being a party to that litigation, he was not bound by the decree therein. Had he intervened and set up his certificates, and asked a fore-closure thereof within the period fixed by the statute, it would be different. That suit did not prevent Fuller from taking the statutory steps necessary to preserve his rights and fix the liability of the county. This he failed to do. In *Helphrey v. Redick*, 21 Neb., 80, MAXWELL, Ch. J.,

says: "A judgment only binds parties and privies. A tax purchaser of real estate not a party to an action to enjoin the treasurer from issuing a deed, nor appearing in the action, is not bound by the decree."

*Merriam v. Otoe County,* 15 Neb., 408, is relied on by the plaintiff in error to sustain the position for which he contends. While that was a similar action to this, in one material respect the facts are unlike. In the case cited the owner of the tax certificates was a party to the suits brought by land-owners, to restrain the issuing of a tax deed and to cancel and set aside the tax certificates, and his rights were adjudicated and determined. In this case, Fuller at no time, so far as the record informs us, asserted or claimed any rights against the land-owner. Again, the provisions of section 180, copied in this opinion, were not considered in *Merriam v. Otoe Co.,* nor did the court decide whether it was essential that the tax purchaser should either demand a deed or bring proceedings to foreclose his certificate in order to maintain an action against the county for indemnity, for the mistake or wrongful act of the treasurer or other officer, etc.

The case of *St. Louis R. Ry. Co. v. Alexander,* 4 S. W. Rep. [Ark.], 753, cited by plaintiff in error, was an action by a purchaser at a tax sale whose deed had been declared invalid, to foreclose the lien for taxes. It was ruled that the cause of action commenced to run from the date of the decree pronouncing the title bad, and not from the date of sale, nor from the expiration of the period of redemption. The question here presented was not involved in nor passed upon in that case.

*Hutchinson v. Board of Supervisors of Sheboygan Co.,* 26 Wis., 402, was an action by the grantee of a tax deed against the county to have the purchase money refunded by reason of the invalidity of the tax sale. It was based upon a statute of Wisconsin which provided that "if, after the conveyance of any lands sold for taxes, *it shall be discov-*

*ered that the sale was invalid,* the county board of supervisors shall cause the money paid therefor on the sale, and all subsequent taxes and charges paid thereon by the purchaser or his assigns, to be refunded with interest on the whole amount at the rate of seven per cent per annum, upon the redelivery of the deed to be canceled." The court held that the statute of limitations did not commence to run on the claim until the grantee has clear and positive information or knowledge of the existence of proof that the sale was invalid. This decision is not in point, being based upon a statute so materially different from the sections of the revenue law of this state. None of the other cases cited in brief of counsel for plaintiff in error conflict with the conclusion we have arrived at. The demurrer to the petition was right, is sustained, and the judgment is

AFFIRMED.

THE other judges concur.