EMERY M. STENBERG ET AL. V. STATE OF NEBRASKA, EX REL. CHARLES B. KELLER ET AL.

FILED MAY 6, 1896.  No. 8281.

1. County Boards: JURISDICTION: DISTRICT COURTS. A county board has exclusive original jurisdiction to examine and pass upon claims or demands against the county properly cognizable for audit and allowance, and the jurisdiction of the district court, as to such, is appellate merely.

48  299
48  318
43  299
49  564
s50  129
52  517
53  263
48  299
58  276
48  299
61  413
61  884
48  299
62  662

2. **Appellate Courts:** Jurisdiction. An appellate court acquires no jurisdiction of the subject-matter where the tribunal or body from which the appeal was taken possessed none.

3. **County Boards:** Authority to Review. In the absence of statutory authority one county board cannot review or reverse the act of a prior board performed within the scope of authority conferred by law.

4. ———: Jurisdiction: Void Sale of Land: Claim for Purchase Money. *Held,* That the respondents had jurisdiction to examine and allow relators' claim.

5. ———: Courts. While boards of county commissioners exercise functions judicial in their nature in the allowance and rejection of claims against the county, such boards are not courts in a constitutional sense, or within the general recognized acceptation of that term.

6. **Counties:** Void Sale of Land. *Douglas County v. Keller,* 43 Neb., 635, adhered to.

7. **Res Judicata:** Collateral Attack. A judgment by a court having jurisdiction of the parties and subject-matter is conclusive upon the parties thereto and their privies, unless reversed in appellate proceedings. It settles all matters litigated, and cannot be assailed collaterally.

8. **Set-Off and Counter-Claim.** The Code of Civil Procedure relating to set-offs authorizes such defenses to be interposed before, but not after judgment. A court of equity, where proper grounds exist therefor, may allow a set-off in cases not provided for by statute.

9. **Negotiable Instruments:** Consideration. A promissory note without consideration is invalid as between the original parties, and cannot be enforced against the maker in the hands of the payee.

Error from the district court of Douglas county. Tried below before Duffie, J.

The opinion contains a statement of the case.

*William D. Beckett* and *Read & Beckett,* for plaintiffs in error:

1. The county board as an executive or administrative body had no power to comply with the demand of Keller and Doane for the return of the money paid by them on account of the purchase of the lots in Douglas Addition. (*Davey v. Dakota County,* 19 Neb., 722; *State v. Alexander,*

14 Neb., 282; *United States v. Stone*, 2 Wall. [U. S.], 525; *Moore v. Robbins*, 96 U. S., 530; *Steel v. Smelting Co.*, 106 U. S., 447; *United States v. Schurz*, 102 U. S., 378; *Union River Logging R. Co. v. Noble*, 147 U. S., 165; *Hilliard v. Connelly*, 7 Ga., 172; *Sumner v. Colfax County*, 14 Neb., 524; *Sioux City & P. R. Co. v. Washington County*, 3 Neb., 40; *State v. Buffalo County*, 6 Neb., 454; *Kemerer v. State*, 7 Neb., 132.)

2. The county board, as a judicial tribunal, had no jurisdiction to consider the petition of Keller and Doane, or to adjudicate upon the validity of their deed from the county. (*Stewart v. Otoe County*, 2 Neb., 181; *Brown v. Otoe County*, 6 Neb., 115; *Gaston v. Commissioners*, 3 Ind., 497; *Board of Commissioners v. Cutler*, 7 Ind., 6; *Rhode v. Davis*, 2 Carter [Ind.], 53; *State v. Conner*, 5 Black. [Ind.], 325; *Furnas v. Nemaha County*, 5 Neb., 367; *Howard v. Dakota County*, 25 Neb., 233; *State v. Buffalo County*, 6 Neb., 454; *Dixon County v. Barnes*, 13 Neb., 294; *State v. Merrell*, 43 Neb., 575; *State v. Churchill*, 37 Neb., 702; *Sioux County v. Jameson*, 43 Neb., 265; *Heald v. Polk County*, 46 Neb., 28; *Dodge County v. Gregg*, 14 Neb., 305; *Streeter v. Rolph*, 13 Neb., 388; *Chicago, B. & Q. R. Co. v. Skupa*, 16 Neb., 346; *Republican V. R. Co. v. Fink*, 28 Neb., 397; *Huddleston v. Johnson*, 71 Wis., 336; *Fordsen v. Gummer*, 37 Minn., 211; *Brooks v. Delrymple*, 1 Mich., 145.)

3. The board of county commissioners having no jurisdiction to consider the petition of Keller and Doane, the district court acquired none by the appeal. (*Brondberg v. Babbott*, 14 Neb., 517; *Union P. R. Co. v. Ogilvy*, 18 Neb., 638; *Stringham v. Board of Supervisors*, 24 Wis., 594; *Keeshan v. State*, 46 Neb., 155; *Latham v. Edgerton*, 9 Cow. [N. Y.], 227; *Plunkett v. Evans*, 50 N. W. Rep. [So. Dak.], 961; *Fidelity Trust Co. v. Gill Car Co.*, 25 Fed. Rep., 737; *Plano Mfg. Co. v. Rasey*, 69 Wis., 246; *Moise v. Powell*, 40 Neb., 674; *Foster v. Pierce County*, 15 Neb., 48; *Town of Wayne v. Caldwell*, 1 So. Dak., 483; *Fitzgerald v. Beebe*, 7 Ark., 305; *Johnson v. Parrotte*, 46 Neb., 51.)

4. The note and mortgage of Keller and Doane to the

county constituted a good off-set against the judgment to that extent, so that it is not the duty of the plaintiff in error to pay said judgment in full.

5. Keller and Doane bought no public grounds of Douglas county. They bought vacant lots, and the deed of the county for such lots vested in them a perfect title. (Dillon, Municipal Corporations, sec. 575; *Roberts v. Northern P. R. Co.*, 158 U. S., 1; *Platten v. Board of County Commissioners*, 103 Ind., 360.)

*Charles B. Keller* and *George W. Doane, contra.*

In reply to the first proposition of plaintiffs in error the following cases were cited: *Douglas County v. Keller*, 43 Neb., 635; *State v. Anderson*, 26 Neb., 521; *State v. Lancaster County*, 6 Neb., 481; *State v. Babcock*, 17 Neb., 188; *State v. Bechel*, 22 Neb., 158; *State v. Benton*, 29 Neb., 460; *Zottman v. City of San Francisco*, 20 Cal., 102; *Mayor of Baltimore v. Porter*, 18 Md., 301; *Smith v. Stevens*, 10 Wall. [U. S.], 326; *Still v. Lansingburgh*, 16 Barb. [N. Y.], 107; *Dill v. Wareham*, 7 Met. [Mass.], 438; *Hurford v. City of Omaha*, 4 Neb., 350; *McCracken v. City of San Francisco*, 16 Cal., 628; *Paul v. City of Kenosha*, 22 Wis., 266.

The question of jurisdiction is no longer an open one. (*Douglas County v. Keller*, 43 Neb., 635; *Washington Bridge Co. v. Stewart*, 3 How. [U. S.], 413; *Skillern v. May*, 6 Cranch [U. S.], 267*; *Himely v. Rose*, 5 Cranch [U. S.], 316*; *State v. Waupaca Bank*, 20 Wis., 672; *Martin v. Hunter*, 1 Wheat. [U. S.], 364; *Gaines v. Rugg*, 148 U. S., 242; *Younkin v. Younkin*, 44 Neb., 729; *Clary v. Hoagland*, 6 Cal., 685.)

The claims were properly presented to the board of county commissioners in the first instance, and an appeal from their order of disallowance taken to the district court. (*Dixon v. Barnes*, 13 Neb., 294; *Richardson County v. Hull*, 24 Neb., 536; *State v. Churchill*, 37 Neb., 704; *Heald v. Polk County*, 46 Neb., 28; *Maddox v. Randolph County*, 65 Ga., 216; *McCann v. Sierra County*, 7 Cal., 121; *McLendon v. Anson County*, 71 N. Car., 38; *Marshall v. Baltimore*

& O. R. Co., 16 How. [U. S.], 325; *Clark v. Saline County,* 9 Neb., 516.)

Boards of county commissioners are not courts within the purview or within the meaning of that term as used in the constitution, nor is their action judicial within the meaning of that term as therein used. (*Eureka Sandstone Co. v. Pierce County,* 8 Wash., 237; *Kemerer v. State,* 7 Neb., 130; *State v. Roderick,* 25 Neb., 629; *State v. Harmon,* 31 O. St., 257; *Gurnee v. Brunswick County,* 1 Hugh [U. S. C. C.], 270; *Sewing Machine Cases,* 18 Wall. [U. S.], 585; *Dogge v. State,* 21 Neb., 279; *People v. Board of Supervisors,* 65 N. Y., 225; *National Bank of Chemung v. City of Elmira,* 53 N. Y., 49; *People v. Supervisors of Schenectady,* 35 Barb. [N. Y.], 408; *Mathews v. Otsego Supervisors,* 48 Mich., 589; *Rowe v. Bowen,* 28 Ill., 117; *Betts v. New Hartford,* 25 Conn., 185; *Black v. Saunders County,* 8 Neb., 440; *Shurbun v. Hooper,* 40 Mich., 503; *Commissioners v. Keller,* 6 Kan., 510; *Flat Swamp Canal Co. v. McAllister,* 74 N. Car., 162; *Ferry v. King County,* 26 Pac. Rep. [Wash.], 537; *Granger v. Pulaski County,* 26 Ark., 39; *Hunsacker v. Borden,* 5 Cal., 288; *State v. Ormsby County,* 7 Nev., 392; *Shanklin v. Madison County,* 21 O. St., 583; *People v. Supervisors,* 8 Cal., 58; *State v. Stout,* 7 Neb., 107; *Lyell v. St. Clair County,* 3 Macl. [U. S. C. C.], 580; *Rock Island County v. Steele,* 31 Ill., 543; *Schuyler County v. Mercer County,* 4 Gil. [Ill.], 20; *Granger v. Pulaski County,* 26 Ark., 40; *Ward v. Hartford County,* 12 Conn., 404; *Anderson v. State,* 23 Miss., 459; *Maddox v. Randolph County,* 65 Ga., 216; *McCann v. Sierra County,* 7 Cal., 121; *McLendon v. Anson County,* 71 N. Car., 38; *Ex parte Harker,* 49 Cal., 465; *Aldrich v. Hawkins,* 6 Black. [Ind.], 126; *State v. Vincent,* 46 Neb., 408.)

The title to real estate was not sought to be recovered, and was not drawn in question in the sense referred to in the constitution. (*Smith v. Kaiser,* 17 Neb., 184; *Radley v. O'Leary,* 36 Minn., 173; *Readle v. Sutton,* 43 Md., 64; *Nicholson v. Walker,* 4 Ill. App., 404; *Potts v. Magnes,* 17 Colo., 364; *Fulton v. Hanlow,* 20 Cal., 487; *King v. Chase,* 15 N. H., 10; *Gilbert v. Thompson,* 9 Cush. [Mass.], 348; *Mush-*

*rush v. Devereaux*, 20 Neb., 49; *Jakenay v. Barrett*, 38 Vt., 316; *Campbell v. McClure*, 45 Neb., 608; *Hart v. Hart*, 48 Mich., 175; *Hungerford v. Redford*, 29 Wis., 345; *Bridges v. Branam*, 33 N. E. Rep. [Ind.], 271; *Conaway v. Gore*, 27 Kan., 126; *Benton v. Marshall*, 1 S. W. Rep. [Ark.], 201; *Lehnen v. Dickson*, 148 U. S., 71; *Quetermous v. Hatfield*, 14 S. W. Rep. [Ark.], 1096.)

In an argument against the third contention of plaintiffs in error reference was made to the following cases: *Groves v. Richmond*, 56 Ia., 69; *Hughes v. Hardesty*, 13 Bush [Ky.], 364; *Real v. Hollister*, 20 Neb., 112; *Davidson v. Cox*, 10 Neb., 150; *Dale v. Shively*, 8 Kan., 276; *Richardson v. Dorr*, 5 Vt., 9; *Thayer v. Clemence*, 22 Pick. [Mass.], 493; *Pollard v. Dwight*, 8 U. S., 429; *Randolph County v. Ralls*, 18 Ill., 29; *Leigh v. Mason*, 1 Scam. [Ill.], 249; *Vermillion County v. Knight*, 1 Scam. [Ill.], 97; *Williams v. Blankenship*, 12 Ill., 122; *Ginn v. Rogers*, 4 Gil. [Ill.], 131; *Gillenwater v. Mississippi & A. R. Co.*, 13 Ill., 1; *Allen v. Belcher*, 3 Gil. [Ill.], 594; *Montgomery v. Heilman*, 96 Pa. St., 44; *Lee v. Parrett*, 25 Minn., 128; *Birks v. Houston*, 63 Ill., 77.

Citation as to right of set-off: *Thrall v. Omaha Hotel Co.*, 5 Neb., 301.

References in reply to the fifth contention of plaintiffs in error: *Chapman v. Douglas County*, 107 U. S., 348; *Eureka Sandstone Co. v. Pierce County*, 8 Wash., 237; *Barker v. Davies*, 47 Neb., 78.

NORVAL, J.

This was an application to the district court of Douglas county by the relators for a peremptory *mandamus* to compel the respondents, the board of county commissioners of said county, to take the necessary steps to cause a warrant to be issued upon the county treasurer in favor of relators, in payment of a judgment recovered in said district court by Charles B. Keller and George W. Doane against Douglas county for the sum of $4,832.62, and costs taxed at $99.73, which judgment was affirmed by this court. (*Douglas County v. Keller*, 43 Neb., 635.) A

peremptory writ of *mandamus* was ordered as prayed, and the respondents have brought the record here for review.

There is no controversy as to the facts. The respondents insist that the judgment sought to be enforced by this proceeding was rendered without jurisdiction, and, therefore, is void. Before entering upon the discussion of the questions involved, it will not be inappropriate to briefly state the facts. The county of Douglas, being the owner of 160 acres of land, which had been purchased and was used as a poor farm, its board of county commissioners adopted a resolution submitting to the voters of the county, for their adoption or rejection, the proposition to sell a part of the poor farm and with the proceeds build a county hospital. This question was voted upon at the general election held in said county November 2, 1886, and much less than one-half, and but a little over one-third, of the total vote polled in said county at said election was cast in favor of said proposition, although it received more than two-thirds of all the votes cast on the question. In February, 1887, the east fifty acres of the poor farm tract was subdivided into lots and blocks, and platted as an addition to the city of Omaha. In the following April, Charles B. Keller and George W. Doane purchased from the county at public auction three of the lots for $4,950. One-third of the purchase money was paid in cash, and for the balance they gave to the county their three promissory notes, aggregating $3,300, and secured the same by mortgage upon the lots. At the same time the county commissioners executed to the purchasers a warranty deed for said lots. Subsequently Keller and Doane paid two of the notes, and likewise paid the taxes upon the lots purchased by them, including taxes levied by the city of Omaha for street improvements. The other note remains wholly unpaid. In April, 1892, Keller and Doane filed with the county commissioners a verified itemized account or claim for the sums paid by them for said lots and for taxes, and demanded a

return of the money thus paid, on the ground that the deed was void for lack of authority on the part of the commissioners to execute the same. The demand was refused. The claim was rejected and disallowed, and an appeal was prosecuted to the district court, where, in May, 1893, the judgment in question was entered in favor of Keller and Doane. The latter has assigned his interest therein to the relator, the Merchants National Bank. of Omaha. It is also shown by the record that there are available funds in the treasury of Douglas county sufficient to pay off and discharge said judgment.

The theory of the relators was, and is, that the county commissioners in executing the deed acted without authority of law, and the conveyance is a nullity, since they could not sell any part of the public grounds of the county without having first been empowered to do so by the electors of the county; and further, that the sale being void, relators were entitled to have the moneys paid by them refunded by the county. This contention was sustained by the decision in *Douglas County v. Keller*, 43 Neb., 635. It was there held that a sale by a county board of the public grounds of the county, without having first submitted the question to the electors thereof, and without receiving the consent of the majority of the electors voting at an election authorized by law, is void and passes no title to the purchaser. On the other hand, it is strenuously insisted by respondents that the county board was without power to pass upon and audit relator's claim, and, therefore, the appeal conferred no jurisdiction upon the district court to adjudicate. We have been favored with able and exhaustive arguments at the bar, and in printed briefs by counsel for the respective parties, which have been invaluable aids in our investigation.

We will first notice the main question in the case, namely: Is the judgment void for want of jurisdiction of the subject-matter? There is no room for doubt that the district court, by the appeal, acquired no greater power

or authority to hear and determine the matter than was possessed by the county board. True, the county appeared in the appellate court and contested the claim, but that is wholly immaterial. Jurisdiction of the person may be waived, but consent cannot confer jurisdiction of the subject-matter. If the county board had no power or authority to act in the premises, it is very evident the district court obtained none, and so say the authorities. (*Brondberg v. Babbott*, 14 Neb., 517; *Union P. R. Co. v. Ogilvy*, 18 Neb., 638; *Moise v. Powell*, 40 Neb., 671; *Johnson v. Parrotte*, 46 Neb., 51; *Keeshan v. State*, 46 Neb., 155.) This rule obtains in other states. (See authorities cited in brief of respondent.) It is equally well settled that a county board has exclusive original jurisdiction in the examination and allowance of most claims against the county. No original action can be maintained against a county upon a claim or demand properly cognizable for audit and allowance before the county board. As to all such the jurisdiction of the district court is appellate merely. (*Brown v. Otoe County*, 6 Neb., 111; *Clark v. Dayton*, 6 Neb., 192; *Dixon County v. Barnes*, 13 Neb., 294; *Richardson County v. Hull*, 24 Neb., 536, 28 Neb., 810; *Fuller v. Colfax County*, 33 Neb., 716; *State v. Merrill*, 43 Neb., 575.)

It is contended by respondents that the claim upon which the judgment in question was rendered was improperly presented to the county board, as it is one which that body was not authorized to act upon, for two reasons: First, the county board, as an executive or administrative body, could not return to Keller and Doane the money which they paid on the lots without undoing the acts of its predecessors, and one executive body or official is powerless to review or overturn the acts of former officers or bodies; second, the county board, in the matter of the allowance of claims, is a court or judicial tribunal, and as such it was without jurisdiction to consider or pass upon the claim, because the title to real estate is involved. We will notice these objections in the

order above stated. We do not question the soundness of the doctrine urged by respondents, that one executive officer cannot review and reverse the acts of a predecessor performed in the scope of his authority, for such is undoubtedly the law when no statutory authority to do so is given, and it was so held and applied in *State v. Alexander*, 14 Neb., 280. That was an application for *mandamus* against the auditor and secretary of state to compel the registration of certain bonds of Dakota county executed in pursuance of statute to replace other bonds of the county previously issued and registered. The respondents insisted that the original bonds were illegal, because they were in excess of the amount the county was authorized to vote. LAKE, C. J., in delivering the opinion of the court, said: "It is only by reviewing the action of former officers, by which the bonds are shown to have been properly issued, that they can now say that they were unauthorized. This, we think, they have no right to do. As to them, the questions confided to the judgment of and decided by their predecessors are *res judicata*, and not to be opened. * * * There is no principle that we are aware of, which will permit the respondents to overturn the action of their predecessors in registering and certifying to the legality of bonds, and a peremptory writ is awarded." The same principle of law is announced in *United States v. Stone*, 2 Wall. [U. S.], 525; *Moore v. Robbins*, 96 U. S., 530; *United States v. Schurz*, 152 U. S., 378; *Noble v. Union River L. R. R. Co.*, 147 U. S., 165; *Hillard v. Connelly*, 7 Ga., 172. The rule deducible from the authorities is that in order for an act by one executive or administrative officer or board to be binding upon a successor, such officer must in performing the same have acted within the scope of the authority imposed by law. If the act was outside of, or exceeded, the power conferred, it is a nullity and binding upon no one.

It is argued that the county board was acting within the scope of its authority when it executed the deed.

This court held the reverse of this to be true in *Douglas County v. Keller, supra,* where the identical judgment here in question was before us for review. As already stated, it was there decided that the sale was void and the purchasers acquired no title, inasmuch as the board had not been previously empowered by the requisite vote of the electors of the county to execute the conveyance of the property, the real estate being a part of the public grounds. It is insisted, however, that no public grounds were bought by Keller and Doane, but vacant lots, and that it required no vote of the electors of the county to authorize the sale of such real estate; hence the deed vested in the purchasers a complete and perfect title. This argument is based upon the provisions of section 22, chapter 18, article 1, Compiled Statutes, which section reads: "Each county shall have power: First—To purchase and hold the real and personal estate necessary for the use of the county, and to purchase and hold, for the benefit of the county, real estate sold by virtue of judicial proceedings in which the county is plaintiff or is interested, and all real estate conveyed by general warranty deed to trustees, in which the county is the beneficiary, whether such real estate is situated in the county so interested or in some other county or counties of the state. Second—To sell and convey, or lease, any real or personal estate owned by the county. Third—To make all contracts and to do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers." The foregoing was not referred to or considered in the opinion in the case of *Douglas County v. Keller,* but the decision therein was based upon sections 23 and 24 and other provisions of said chapter, which section 24 declares: "The county board shall not sell the public grounds, as provided in the third subdivision of the preceding section, without having first submitted the question of selling such public grounds to a vote of the electors of the county." It may be that real estate acquired by the county through a tax

sale, or by virtue of a sale under an execution upon a judgment rendered in its favor upon an official bond, or other real estate, the title to which was acquired by the county through some other channel, but which was not purchased and used for county purposes, may be sold and conveyed under the provisions of said section 22 without the previous affirmative consent of the voters of the county; but whether so or not we do not decide, as it does not arise in this case. Said section has no application here, so far as we have been able to discover. The lots sold to Keller and Doane were parts of a tract which the county had purchased for, and used as, a poor farm,—a purpose wholly public in its character,—and therefore said lots were parts of the public grounds of the county, which the county board could not dispose of until authorized so to do in the mode pointed out in section 24. True, these lots were parts of the fifty acres of the poor farm which had been platted as an addition to Omaha, but that was done without the sanction of the voters of the county, and such platting did not make the real estate included therein any the less public grounds of the county. An officer cannot do indirectly what he is forbidden or unauthorized directly to do. If this sale is valid and receives judicial sanction, then it will be an easy matter to evade the safeguards of the statute relating to the sale of real estate purchased and used for county purposes; and there would be nothing to prevent the present, or some future, county board of Douglas county from selling part of the tract upon which the court house is erected, without having previously submitted the proposition to do so to the voters, if the board, by merely platting a part of the tract or abandoning the same for county purposes, thereby makes such real estate no longer public grounds within the purview of the statute. The construction contended for by respondents is neither a natural nor reasonable one, but is manifestly against the intention of the law-makers, and we decline to adopt it. The mere segregating by the

county board of the fifty acres from the poor-farm tract, and the platting thereof into blocks and lots, did not confer power upon the county commissioners to sell such lots until first empowered to make such sale in the mode indicated by section 24, article 1, chapter 18, Compiled Statutes. We therefore hold that the provisions of said section 22 of said article and chapter are not applicable here, and that in making the sale of said lots to Keller and Doane the county board failed not only to keep within the scope of its powers, but acted without any authority whatever. The statute has prescribed the manner in which the public grounds of a county may be disposed of, and such mode must be pursued. If not, there is an entire lack of power. The legislature has required that the affirmative consent of the voters of the county shall be first given to sell such grounds, and a conveyance without such previous consent is not voidable merely, but is absolutely void, and confers no title upon the purchaser. No authority to sell these lots was ever conferred by a vote of the electors of the county as the statute required, therefore the deed was without any validity.

The commissioners, in passing upon the claim of Keller and Doane, even had they allowed it, would have in nowise overruled or reversed any act of their predecessors, since there had been no prior decision or ruling by the county board upon the question of refunding this money by the county. It has often been held in this state that a county board, in examining and passing upon claims against the county, acts judicially, and the allowance or rejection by it of a claim has the force and effect of a judgment, unless reversed or set aside by appellate proceedings. (*State v. Buffalo County,* 6 Neb., 454; *Brown v. Otoe County,* 6 Neb., 111; *State v. Churchill,* 37 Neb., 702; *State v. Morrill,* 43 Neb., 575; *Sioux County v. Jamison,* 43 Neb., 265; *Heald v. Polk County,* 46 Neb., 28; *State v. Vincent,* 46 Neb., 408.) But we are unable to agree with counsel for respondents that county boards are courts

in a constitutional sense, or within the general accepta-
tion of that term.   They are not created courts by the
constitution,   nor   does   the   present   law   establishing
county boards and defining their duties and powers con-
stitute them courts.   They are merely legislative and
administrative bodies, with limited powers, created for
the transaction of county business, exercising in some
matters, it is true, functions judicial in their nature, and
appeals lie from their decisions in certain matters pro-
vided for; but that does not make them courts.   So, too,
officers not judicial sometimes are clothed with judicial
powers.   A county superintendent of schools exercises
*quasi*-judicial functions in the changing of the boundaries
of school districts, and an appeal may be taken from his
decision, yet there is no superintendent's court.   The
state auditor in the audit and allowance of claims acts
judicially, and the right to appeal is given, but that does
not constitute an auditor's court.   Many other instances
might be mentioned where judicial power, to a limited
extent, is lodged in the hands of different officers for
specific purposes.   "A court is a body in the government
organized for the public administration of justice at the
time and place prescribed by law."   (4 Am. & Eng. Ency.
of Law, 447.)   County boards do not fall within this defi-
nition.   They   cannot   issue   subpœnas   for   witnesses.
The rules of law governing the admission of testimony
in the courts are not usually followed before county
boards in passing upon claims.   Such boards often act
without testimony and receive, and consider sufficient,
evidence   inadmissible   in   courts   of   justice.   County
boards do not render judgments.   The allowance or re-
jection of a claim from which no appeal has been prose-
cuted has merely the effect of a judgment.   The statute
in no place refers to such boards as courts.   Nor does
the fact that the law requires each county board to pro-
cure a seal constitute it a court.   Such seal is expressly
made by the legislature the seal of the county, and not
that of the board as a court or judicial tribunal.   That it

is obligatory upon county commissioners to hold their sessions at the court house for the transaction of the business of the county is not significant. The county treasurer and other county officers are required to hold their offices in the same building.

Section 1, article 6, of the present constitution declares that "the judicial powers of this state shall be vested in the supreme court, district courts, county courts, justices of the peace, police magistrates, and such other courts inferior to the district courts as may be created by law for cities and incorporated towns." It will be observed that county boards are not classed or referred to above as courts. Certainly they are not created as such by the language quoted, nor does it, as counsel concede, confer power upon the legislature to establish commissioners' or supervisors' courts. It merely empowers the legislature to create courts inferior to the district courts for cities and incorporated towns. Neither the constitution nor the statute has constituted county boards courts, although, without consideration, this court in some of its opinions has, in speaking of such boards, inaccurately called them "inferior courts," or "inferior tribunals."

It is argued that such boards were created courts by the legislature prior to the adoption of the constitution of 1866, and that they were continued in existence by the provision found in the first section of the last article of that constitution, which declares that "all laws now in force shall remain in force until altered, amended, or repealed by the legislature," and also by section 4, article 16, of the constitution of 1875, which reads: "All existing courts which are not in this constitution specifically enumerated, and concerning which no other provision is herein made, shall continue in existence and exercise their present jurisdiction until otherwise provided by law." The first law creating county boards was enacted at the second session of the territorial legislature of Nebraska. (Laws, 1856, ch. 20, p. 70.) The next general act relating to the

powers and duties of such boards was passed in 1861 (Laws, p. 146); and both acts, without material changes, were carried into the Revised Statutes of 1866 as chapter 9. Conceding, as contended, that the territorial legislatures intended by said laws to create county boards to be courts, yet it is evident that under section 9 of the organic act they had no power to do so. This section provides that "the judicial power of said territory shall be vested in a supreme court, district courts, probate courts, and in justices of the peace." Thus it will be seen that congress vested the entire judicial power of the territory in the certain specified courts, and the legislature was powerless to create any other courts or judicial tribunals. The provision in the constitution of 1866 quoted above only continued in existence laws then in force, and gave no new life or vitality to statutes which were invalid. In 1873 "an act concerning county and county officers" (Gen. Stats., p. 232) was passed, which, it is claimed, preserved the provisions of prior acts relating to county boards, and created such to be courts. This act was passed under the constitution of 1866, section 1, article 4, of which provided that the judicial power of the state should be vested in certain enumerated courts, "and such inferior courts as the legislature may from time to time establish." Section 4 of the same article reads as follows: "The jurisdiction of the several courts herein provided for, both appellate and original, shall be as fixed by law; *Provided*, That probate courts, justices of the peace, or any inferior court that may be established by the legislature shall not have jurisdiction in any matter wherein the title or boundaries of land may be in dispute. Nor shall either of the courts mentioned in this provision have the power to order or decree the sale or partition of real estate; and *Provided further*, that justices of the peace, and such inferior courts that may be established by the legislature shall not have jurisdiction when the debt or sum claimed shall exceed one hundred dollars," etc.

Counsel for respondents argue that the said act of 1873 created, as it might do under said section 1, article 4, above set out, county boards inferior courts, and that such courts under section 4 of the same article were ousted of jurisdiction in any matter involving the title or boundaries of real estate; further, that by virtue of section 4, article 16, of the present constitution, county boards continued to exist as courts, with the same limitation as to jurisdiction. We have carefully read and considered said act of 1873, and we find nothing therein contained to warrant the conclusion contended for by counsel. If such boards were by said act constituted inferior courts, then they could not examine, audit, and allow claims against the county where the amount thereof exceeded one hundred dollars. Manifestly such was not the intention of the legislature, and no such construction has, within our knowledge, ever been placed upon the powers of the county boards. They have universally acted upon claims without regard to the amount involved. True, this statute, as well as the prior one upon the same subject, authorized county boards to preserve order and punish contempts by fine and imprisonment, yet that did not have the effect to create such boards judicial tribunals. Each house of the legislature possesses powers to punish for contempts in certain cases, but this falls far short of constituting it a court. The authority to punish for contempt is not conferred alone upon a judge or court. A notary public may commit a witness for contempt who refuses to give his deposition. (*Dogge v. State*, 21 Neb., 272.) If the act of 1873 constituted county boards inferior courts, we now have no such courts, for the legislature in 1879 enacted a law relating to county officers, establishing thereby county boards, not as courts, but as administrative bodies for the transaction of county business, and at the same time in express terms repealed the said act of 1873, as well as all acts or parts of acts in conflict with the said act of 1879. (Session Laws, 1879, p.

353.) This latter act, with some changes or modifications not important on this question, is still in force and effect. In this state we have no commissioners' or supervisors' courts. The conclusion reached upon this branch of the case makes it unnecessary to consider the contention that the title to real estate was involved in the auditing of the claim of Keller and Doane.

It is insisted that the judgment improperly included the amount of taxes on these lots paid by the purchasers to the city of Omaha. The point raised goes to the merits of the original controversy, and is not a proper matter for consideration now. For us to do so would be to investigate anew, in a collateral proceeding, a question which was finally adjudicated by the judgment sought to be enforced. It is a rule firmly established by the decisions that a judgment rendered by a court having jurisdiction over the parties and the subject-matter is conclusive upon the parties and their privies, and cannot be assailed collaterally, even though it may have been erroneously entered. (*State v. Buffalo County*, 6 Neb., 454; *Bryant v. Estabrook*, 16 Neb., 217; *Hilton v. Bachman*, 24 Neb., 490; *Yeatman v. Yeatman*, 35 Neb., 422; *Taylor v. Coots*, 32 Neb., 30; *Smithson v. Smithson*, 37 Neb., 535; *Ripley v. Larsen*, 43 Neb., 687.)

It is also urged that Douglas county is entitled to set off against the judgment the amount of the unpaid note given by Keller and Doane as a part of the purchase price of the lots. The provisions of the Code of Civil Procedure relating to set-offs authorizes such defenses to be interposed before, and not after, judgment. While a demand in the nature of a set-off cannot be allowed under the statute after judgment, yet a court of equity, in a proper case, may grant relief, as when it is shown that the party against whom the set-off is claimed is insolvent. (*Thrall v. Omaha Hotel Co.*, 5 Neb., 295; *Richardson v. Doty*, 44 Neb., 73.) This is not a suit in equity, but strictly a law action. Besides, the insolvency of the relators is neither alleged nor proved, nor is any other

ground for equitable cognizance disclosed by the record. Moreover, if the county is liable for a return of the money paid by Keller and Doane, as we have already decided, it follows that the note asked to be set off is without consideration, and the county is not entitled to recover thereon, since said note is one of three executed as a part of the same transaction, and the judgment includes the money paid on the other two notes.    The judgment is

AFFIRMED.