WILLIAM W. MILLER, APPELLEE, v. OLIVER P. HURFORD ET AL., AND REDICK & CONNELL, APPELLANTS.

1. **Constitutional Law.** When the title of an act is to *amend* a particular section of a statute, the proposed amendment must be germane to the subject matter of the section sought to be amended or it will be void.

2. **Bills.** A bill retained by the governor for more than three days while the legislature was in actual session, thereby became a law under section 19, Art. III, of the constitution of 1867, notwithstanding that soon after it was presented to him for his approval, the legislature adjourned from the 29th of March to the 30th of May of that year. The constitutional restriction applies to an adjournment *sine die*, and not to one from time to time.

3. **Taxes:** FORECLOSING LIEN. An action to foreclose a tax lien may be maintained upon failure of the tax title after the time for redemption has expired, and it is unnecessary before bringing such action to test the validity of the tax deed by an action at law.

APPEAL from a decree rendered by Savage, J., of the district court for Douglas county.

*E. Estabrook* and *W. J. Connell,* for appellants, cited *Peet v. O'Brien,* 5 Neb., 362, 365. *Wemier v. Porter,*

4 N. W. R. (Mich.), 306. The remedy of foreclosure was repealed by act of 1879, sec. 183, p. 349. Saving clause saves only rights, not remedies. Sedgwick on Statutory and Constitutional law, 108. *Bennett v. Hargus,* 1 Neb., 419. *Van Inwagen v. Chicago,* 61 Ill., 31. *Hunt v. Jennings,* 5 Blackf., 195. *Sturges v. Cronmirchild,* 4 Wheat., 122. The act of 1871, sec. 7, Gen. Stat., 936, and the act of 1875, p. 107, are unconstitutional and void. *Sovereign v. The State,* 7 Neb., 410. *Smails v. White,* 4 Neb., 353. *City of Tecumseh v. Phillips,* 5 Neb., 310. *People v. Mahanay,* 13 Mich., 494.

*John D. Howe,* for appellee, cited *People v. Hatch,* 19 Ill., 283. Cooley Const. Lim., 152, and cases cited. *People v. Bowen,* 30 Barb., 24. *Opinion of Judges,* 45 N. H., 607. *Opinion of the Judges,* 99 Mass., 636.

MAXWELL, CH. J.

This is an action to foreclose certain tax liens. The plaintiff alleges in his petition that he purchased the east one-half of the north-east quarter of the north-west quarter of section 22, township 15 north, range 13 east in Douglas county, being five acres of ground situate in the city of Omaha, on the twenty-ninth day of January, 1876, for the taxes due thereon for 1874, amounting to the sum of $115.32, and for the taxes for the year 1873, amounting to the sum of $67, and on the ninth of November, 1877, for the taxes of 1876, amounting to the sum of $107.34, and that as purchaser of said land he paid other taxes thereon as follows:

January 29, 1876, county and state taxes for the year 1876, $359.14.

January 26, 1876, county and state taxes for 1871 and 1872, $261.

August 21, 1876, county and state taxes for 1875, $62.60.

October 31, 1878, county and state taxes for 1877, $52.70.

October 31, 1878, city taxes for 1877, $59.16.

The total amount being the sum of $1,141.21.

That certificates of purchase were duly issued to the plaintiff, which, on or about the first day of February, 1878, were surrendered to the treasurer of said county, and tax deeds in due form were issued and delivered to him, which were afterwards duly recorded. That at the February, 1879, term of the district court of Douglas county, in an action to obtain possession of said land, it was held that the plaintiff's title to said land under said deeds had failed, and the plaintiff waives all claim of title to said land by virtue of said deeds, except to and for a lien of the taxes paid as aforesaid, and that no part of the same has been paid, etc.

The defendants Redick and Connell in their answer admit that the plaintiff purchased the lands in controversy on the twenty-fourth of January, 1876, "for certain pretended county, state, and city taxes claimed to have been levied for the year 1874, and also admit the purchase for the years 1873 and 1876, and that he received certificates of purchase and afterwards tax deeds, which were duly recorded. That on the twenty-eighth of May, 1878, the plaintiff commenced an action of ejectment against the owners of said land, which came on for trial on the third of May, 1879, and that said plaintiff intentionally and purposely submitted said cause to said court and jury without offering said deeds or either of them in evidence, and without offering any proof whatever in relation to said deeds, or their contents to said tax purchaser or payments, and nowhere did it appear in the pleadings in said cause or in any

of the tax proceedings or the record thereof that the validity of said tax deeds or the title of said plaintiff acquired by reason of said purchases at treasurer's sale was in any way involved," etc.    That after the expiration of three days from the rendition of the judgment, no attempt being made to vacate the same, the defendants Redick and Connell purchased said premises from the Hurfords, and received warranty deeds of conveyance.    It is alleged in the answer, and denied in the reply, that the Hurfords had a sufficient amount of personal property in Douglas county, during the time for which the taxes were delinquent, from which the aforesaid taxes could have been collected.    They deny that there was any legal or valid assessment or levy of taxes on said real estate in the years named.

On the trial of the cause, a decree for the sum of $1,688 was rendered in favor of the plaintiff.    The defendants Redick and Connell appeal to this court.

In 1871, the following amendment to the revenue law of 1869 was passed (Laws of 1871, p. 82): "Whenever the title acquired by a purchaser of real estate at treasurer's sale shall fail, the purchaser at such sale, or his heirs or assigns, shall have a lien on the real estate so purchased for the full amount of the purchase money, together with interest thereon from the date of such purchase at the rate of forty per cent per annum, until the same is fully paid, and such purchaser, his heirs, or assigns, may pay all taxes lawfully assessed on such real estate *after* such purchase, and when the said title shall fail may have a lien for all such taxes, together with interest thereon from the time of payment at the rate aforesaid.    The lien hereby created may be enforced in the manner directed by law for foreclosing mortgages."    Gen. Stat., 936.

This act was not signed by the governor, but is certified by the presiding officers of the senate and house

of representatives.   It is objected that the senate and house adjourned before the expiration of three days from the time the bill was presented to the governor for his approval.   It appears from the journals of the two bodies that the adjournment was had from the twenty-ninth of March, 1871, to the thirtieth of May, of that year, and that the governor had possession of ·the bill for more than three days while the legislature was in session, it being retained until June 6, 1871, the legislature being in session from May 30th.   The provisions of section 19, art. III, of the constitution of 1867, apply to adjournments *sine die*, and not to adjournments from time to time.   But an amendment must be germane to the subject matter of the act or section to be amended.   Our constitutional provision that "no bill shall contain more than one subject, which shall be clearly expressed in its title," is but making inviolable the rule governing legislative bodies, that "no proposition or subject different from that under consideration shall be admitted under color of amendment."   Experience has shown that in the absence of constitutional restrictions, the rule at times is liable to be overthrown, and objectionable and pernicious legislation is the result.   To guard against this evil, our constitution prohibits more than one subject being embraced in a bill.   And while this provision has sometimes been attended with inconvenience, as in case of a revision of the laws, it is a safeguard against corrupt or improvident legislation, and its effect has been to simplify legislation and place every bill upon its true merits.   But if, under the pretext of *amending* a section, a subject entirely foreign to the subject matter of the section to be amended can be introduced, this barrier will be entirely broken down and the constitutional guaranty in effect destroyed.

The subject-matter of section 51 is to make taxes

upon real property a perpetual lien thereon against all persons and bodies corporate except the United States and this state. Any amendment to the section in relation to the lien or the mode of enforcing it is valid. But extraneous matter not relating to the subject of the section is in no sense an amendment, is within the inhibition of the constitution, and void. *White v. The City of Lincoln*, 5 Neb., 516. *City of Tecumseh v. Phillips*, Id., 305.

In the year 1875 an act to provide the mode of foreclosing tax liens upon real estate in certain cases was passed. Laws of 1875 page 107. This act merely regulates the procedure and requires the action to be brought within five years from the date of the sale, and is not an amendment. The rule laid down in *Smails v. White*, 4 Neb., 355, and *Sovereign v. The State*, 7 Id., 410, therefore does not apply.

The proper construction of the act of 1875 was before this court in the case of *Peet v. O'Brien*, 5 Neb., 360, and it was held that the action could not be maintained until after the expiration of the time limited for redemption, nor until the title failed. The theory of our revenue law is, that the purchaser at tax sale buys the land. He does not make a mere loan of the money paid, to be repaid at a high rate of interest, but he purchases the land subject to the right of redemption at any time within two years. Until the time for redemption has expired no proceeding can be instituted by him to divest the title of the owner of the fee. It is not the policy of the law that any one should forfeit his estate, because from misfortune or neglect he has failed to meet the burdens imposed by the government upon his property, by a particular day. And the right of redemption is favored in equity as being in furtherance of justice, and is liberally construed. But on the other hand the burden of govern-

ment must be borne by the property within its juris-
diction. These burdens are intended to be imposed
equally upon the property of all. If the property of
A is liable for taxes thus imposed upon it, there is no
reason why the property of B should not also be lia-
ble. The law therefore provides for the sale of the
real property for the delinquent taxes due thereon.
But the authority to sell land for taxes is a naked
power, and the officer entrusted with it merely exer-
cises a naked special authority which must be strictly
complied with. It follows, therefore, that before the
title will pass by a tax deed under such sale, there
must have been a substantial compliance with the law
in all the proceedings which have led to it. Cooley
on Taxation, 34. Blackwell on Tax Titles, 34, and
note 2.

Judge Cooley says: "Tax sales are made exclusively
under a statutory power. The officer who makes
them, sells something he does not own, and which he
can have no authority to sell except as he is made the
agent of the law for that purpose. But he is made
such agent only by certain steps which are to precede
his action, and which, under the law, are conditions to
his authority. If these fail, the power is never cre-
ated. If one of them fails it is as fatal as if all failed.
Defects in the conditions of a statutory authority can-
not be aided by the courts; if they have not been ob-
served, the courts cannot dispense with them, and thus
bring into existence a power which the statute only
permits when the conditions have been fully complied
with." Cooley on Taxation, 324.

A failure of title through a tax deed therefore fol-
lows as a consequence, if any of the essential steps in
the tax proceedings have not been complied with,—
that is, the power to make the deed never in fact ex-
isted, and therefore no title passed by its execution.

The want of power may appear on the face of the deed as in the case of a failure to recite the place where the tax sale was made. *Haller v. Blaco*, 10 Neb., 36. Or by the omission of the county seal, *Sutton v. Stone*, 4 Id., 321. Or the deed may be valid on its face, but invalid from the omission to take some essential step in the proceedings. In all these cases no title passes, and it seems unnecessary to require the purchaser to go into a court of law and have his title declared void before instituting proceedings to foreclose. The failure of title flows from the defect in the tax proceedings and not from the judgment of the court. If, therefore, there is a failure of title and an action to foreclose the lien is instituted, and it is alleged in the petition that the title has failed, issue may be taken upon that question, and if it is found that there is a valid subsisting tax deed upon which the claim of the plaintiff is founded the action must be dismissed at his costs.

In the case at bar the judgment for the Harbaughs in the action of ejectment was conclusive upon the defendant as to the invalidity of his title, and there is no claim in the answer that it is valid, as the defendants claim to be the owners of the land in controversy.

The revenue law of 1866 made taxes upon real estate a perpetual lien thereon, and this provision was retained in the revenue act of 1869, and in the subsequent legislation of this state upon that subject.

The act of 1871 gave the purchaser at tax sale a lien for the purchase money and interest in case his title failed, and also gave him a lien for such taxes as were lawfully assessed after such purchase. This provision doubtless was enacted to encourage bidding at tax sales by securing the purchaser from loss in case his title failed. The plaintiff has paid the taxes due

on the defendant's land, and justice as well as the law requires that such money be repaid. No particular objection has been pointed out to the assessment or levy of taxes, and they appear to be valid. We are not entirely clear as to the right of the plaintiff to add the taxes paid for the years 1870 and 1871 to his claim, but no objection is made to the judgment on that ground.

The revenue law of 1879 did not repeal the right to foreclose tax liens. Comp. Stat., 437. The plaintiff is entitled to a decree for the money actually paid by him in purchasing said lands at tax sale, and for taxes necessarily paid upon such lands, together with interest upon the sums so paid at 12 per cent, and that said lands be sold as upon foreclosure of mortgage and the proceeds applied first to the payment of the amount due and costs, and the remainder, if any, to W. J. Connell.

JUDGMENT ACCORDINGLY.