## No. 13,967.

STATE OF LOUISIANA vs. THE AMERICAN SUGAR REFINING COMPANY.

106  553
113 1038

106  553
e119  189

106  553
f124  633

### SYLLABUS.

1. An act to amend certain sections of a general law is limited in its scope to the subject-matter of the sections proposed to be amended. The amendment of a special section of an act implies merely a change of the provisions upon the same subject to which the section relates.

2. The General Assembly is not authorized, under a title to a law purporting to amend a particular section of another law, to alter the subject-matter of a different section, to which no reference is made in the title, and to transfer and insert such altered matter as a "proviso" into the amended section (with which it has no logical connection), leaving the latter as it was originally, save as to the matter so thrown into it. Such insertion is an "addition" rather than an "amendment" to it.

3. Though a particular section of a law may, by amendment, be broadened so as

to bring within its provisions some particular matter which could logically and legally have been placed in it originally, this matter must be something which had not been already specially and differently provided for in another section of the same statute, and to which section no reference is made in the amendatory law.

APPEAL from the Civil District Court, Parish of Orleans—*Ellis, J.*

*Hugh C. Cage,* for Plaintiff, Appellee.

*Carroll & Carroll, (Foster, Milling, Godchaux & Sanders,* of Counsel), for Defendant, Appellant.

The Opinion of the Court was delivered by NICHOLLS, C. J.

On Application for Rehearing by BLANCHARD, J.

## STATEMENT OF THE CASE.

NICHOLLS, C. J. In 1898 the Legislature of the State of Louisiana enacted a general license law, which is found in the acts of that year, under the number one hundred and seventy-one (171). The title of the act was: "An act to levy, collect and enforce payment of an annual license tax upon all persons, associations of persons, or business firms and corporations pursuing any trade, profession, vocation, calling or business (except those who are expressly excepted from such license tax by Article 229 of the Constitution); and prescribing the mode and method in which certain persons subject to license shall make report of their business.

The first section of the act levied an annual license tax for the year 1899, and for each subsequent year, upon each person, association of persons, or business firms or corporations, pursuing any trade, profession, vocation, calling or business, subject to license under Article 229 of the Constitution.

The second section enacted "that on the 2nd day of January, 1899, and each subsequent year, each tax-collector throughout the State shall begin to collect and shall collect as fast as possible from each of the persons or business firms, association of persons, and corporations pursuing within his district or parish any trade, profession, calling or business, a license tax, as hereinafter graduated."

The third section enacted that "the annual licenses for all the kinds of business hereinafter named, except as afterwards provided, shall be graduated in twenty-five classes."

The General Assembly in subsequent sections then enumerated separately different callings and occupations by name, placing each one into classes and affixing to each of the classes a certain license, as, for instance, "manufactories, banking business," etc., etc.

The third section of the act fixed the licenses for manufacturers in general terms, and for banks and banking associations, corporations or agencies, under a classification.

The tenth section fixed, under classification, the license for omnibus or regular coach or herdic business, collection agencies or agents for the collection of moneys, accounts, notes, etc., and for every business for transporting money, merchandise or other articles, by express or transfer, of operating one or more boats or tug-boats, or keeping a warehouse or storage-room or landing where goods are received and delivered.

The twelfth section fixed, under classification, licenses for the business of keeping a theatre, opera house, amphitheatre, academy of music, cancan or other dancing establishments, museums, menageries, circus or traveling shows, balls and entertainments, railroad or steamship ticket sellers, peddlers, hawkers.

The fourteenth section fixed, under classification, the licenses for the carrying on the business of agencies for steamboats, draying, trucking, keeping cabs, carriages, hacks or horses for hire, undertakers or lessees of toll bridges and ferries, master builders, stevedores, bill posting or tacking, contractors and mechanics who employ assistants, lawyers, doctors, dentists, photographers, oculists, jewelers, and all other business not provided for in the act.

The license for *"refining sugar and molasses,* or either of them," was placed in the eleventh section of the act, included among other occupations or businesses therein provided for. These occupations or businesses were divided into twenty different classes. The first class was based on the amount of gross annual receipts of two million five hundred thousand dollars and over, for which the license was fixed at six thousand two hundred and fifty dollars, and the twentieth class was based upon gross annual receipts being less than fifteen thousand dollars, for which the license was fixed at twenty dollars.

In 1900 the General Assembly passed the act known as Act No. 103

of that year. Its title was "An act to amend and re-enact Sections 10, 12 and 14 of Act No. 171 of 1898, entitled 'An act to levy, collect and enforce payment of an annual license tax upon all persons, associations of persons or business firms and corporations, pursuing any trade, profession, vocation, calling or business, except those who are expressly excepted from such license tax by Article 229 of the Constitution, and prescribing the mode and method in which certain persons subject to license shall make report of their business.' "

The first section is as follows:

"Be it enacted," etc.,  *  *  *  "That Section 10 of Act No. 171 of 1898, entitled, 'An act to' (giving the full title of the act) 'be amended and re-enacted to read as follows: Section 10—Be it enacted," etc.  *  *  *  (Here follows the section as amended and re-enacted.)

At the close of Section 10, as re-enacted, are the words: "Provided, further, that for carrying on the business of refining sugar and molasses, or either of them, the annual State license shall be one-eighth of one per cent. upon the gross annual receipts of such business."

The second section of the act of 1900 declares that: "All laws or parts of laws in conflict with the provisions of this act are hereby repealed." The title of the act, as has been stated, was not only to amend Section 10, but *Section 12 and Section 14;* but there is nothing in the body of the act which declares that either of those sections were therein "repealed," amended or re-enacted.

The business of "refining sugar and molasses, or either of them," was referred to in Section 10 only in the *"proviso"* at the end of the section. It is not brought in as one of the businesses the licenses for which were being provided for, originally fixed and classified in the section. That section provides a specified classification for the licenses for the other occupations enumerated therein. The *proviso* fixes the license for "carrying on the business of refining sugar and molasses at one-eighth of one per cent. upon the gross annual receipts of such business."

The present suit is one brought by the State through one of its tax-collectors to recover against the defendants the sum of twenty-one thousand two hundred and fifty dollars as a license tax for the year 1901.

It is alleged that defendant is engaged in the business of refining sugar and molasses in the Second District of New Orleans; that its

gross annual receipts from said business for the year 1900 exceeded $21,000,000; that defendant had taken out no State license for the year, and that the sum of $21,250 is due therefor; two per cent. per month interest from March 1, 1901, and ten per cent. interest on principal and interest as attorney's fees.

Defendant filed an exception of no cause of action, and an answer containing, first, a general denial. It admitted that it was carrying on the business of refining sugar and molasses, but denied that it refined any molasses, except such as is produced as an incident of the refining of sugar. It admitted that it had not taken out any license for the year 1901. It denied that its gross receipts from said business exceeded the sum of twenty-one millions of dollars for the year 1900. It denied that it was liable to any license tax for the year 1901, for the reasons that defendant's business of refining sugar and molasses is a manufacturing business, and defendant, in conducting said business, is a manufacturer and exempt from license taxation by the terms of Article 229 of the Constitution of Lousiana of 1898; and any act of the Legislature attempting to impose a license tax upon defendant for conducting said business is unconstitutional and void.

(Without waiving the defenses afterwards made) it averred that the proviso to Section I of Act No. 103 of the General Assembly of Louisiana of 1900, under which defendant was sought to be held liable for a license tax to the State of Louisiana was contrary to Article 229 of the Constitution of Louisiana of 1898, in that the tax sought to be imposed by said proviso to said act was not graduated as required by Article 229 of the Constitution of 1898.

(Without waiving the defenses afterwards made) it averred that said proviso was further contrary to Article 225 of the Constitution of 1898 in that the tax sought to be imposed thereby was not equal and uniform as required by said Article 225, and that said proviso was further contrary to Articles 225 and 232 of the Constitution of 1898, and to the first section of the Fourteenth Amendment to the Constitution of the United States, in that the tax sought to be imposed thereby was in effect and in fact an income tax and was not authorized by any law of the State of Louisiana; and, if authorized by any law of the State, the same was not equal and uniform upon all persons within the jurisdiction of the State of Louisiana, and denied to defendant the equal protection of the laws of said State.

That said Act No. 103 of 1900, and particularly said proviso to Section I of said Act, was in violation of *Article 31* of the Constitution of Louisiana of 1898, which provides that every law shall embrace but one object and shall be expressed in the title, forasmuch as the said Act No. 103 of 1900 by its title purports to amend only Sections 10, 12 and 14 of Act No. 171 of 1898, and does not authorize the legislation embraced in said proviso, which is an amendment of Section 11 of said Act No. 171 of 1898, not embraced in the title, and not germane nor pertinent to said Sections 10, 12 and 14 of said Act No. 171 of 1898.

That if said Act No. 103 of 1900 and said proviso to Section I thereof be authorized by the title to said act, then said Act No. 103, and particularly said proviso to Section I thereof, is contrary to *Article 32* of the Constitution of Louisiana of 1898, which provides that no law shall be amended by reference to its title, but in such cases the act revived or section amended shall be re-enacted and published at length, inasmuch as said Section 11 of said Act No. 171 of 1898, which is amended by the said proviso of Section I of Act No. 103 of 1900, is not re-enacted and published at length.

That said Act No. 103 of 1900 and the proviso to Section I thereof are contrary to the Constitution of the United States and particularly to the third paragraph of the 8th Section of the 1st article thereof, in that it seeks to impose a direct tax upon articles of merchandise and the proceeds of sale thereof intended and used for commerce between the states, and defendant avers that out of the gross output and receipts ($20,451,933.39 of its said business of refining sugar and molasses, in the year 1900) $18,121,577.01 of said receipts arose from sales of said output in and to persons in other States of this Union, and which output and merchandise was actually shipped to other States.

Defendant specially pleaded the unconstitutionality of said Act No. 103 of 1900 and of the proviso to Section I thereof on each and every ground above set forth, and averred that same was null, void and of no effect.

## I.

The district judge, in affirming the constitutionality of the act, in so far as it was attacked on account of its title, form and object, and in sustaining the position taken by the State, expressed his

views in the judgment appealed very clearly and concisely in the following language:

"The title of the Act No. 103 is, 'An act to amend and re-enact Sections 10, 12 and 14 of Act 171 of 1898, entitled "An act to levy, collect and enforce payment of an annual license tax upon all persons, associations of persons or business firms and corporations pursuing any trade, profession, vocation, calling or business," etc., etc. *No particular business, calling or profession* is named in the title of this act. Its *one object,* which is clearly stated in the title, is to *impose and collect a license tax from all persons* who pursue any business, vocation, trade or calling which by the organic law is not exempt from such tax. No one reading this title could say that any particular profession or business is taxed. This could be determined only by examining the entire body of the act, but the title unerringly declares that upon every trade, profession, etc., not exempt by law, a license tax is·levied and will be collected, and this is the sole object of the act.

For convenience, the text of this law is broken into thirty-one sections, and many of the sections are broken into many paragraphs, but all of these relate to the license tax on business not exempt, and nothing else.

Its sections, which are brought under review by this case, are sections 10, 11, 12 and 14.

Section 10 fixes the license tax upon business of operating coach, omnibus or herdic lines, on collection agencies, on the express and transfer business, on the storing or warehouse business and on the business of operating tugs or towboats.

Section 11 fixes the license tax on about fifteen different callings or trades, among them ·the business of gas light, electric light, water-works, miniature railroads, shoot-the-chutes, saw mills, telegraphing, telephoning, cotton compress or ginning or pickery, slaughter house, brewing or distillery, tobacco, cigar and cigarette, cotton seed oil, cake and meal, refining sugar and molasses, etc., etc.

Section 12 fixes the license on the business of keeping theatre, opera house, amphitheatre and academy of music, while Section 14 provides for the license tax on business agencies, the business of steamboats, drays, hacks, cabs, carriages, undertakers, livery stables, toll bridges, ferries, master builders, stevedores, bill posting, contractors and mechanics, etc., etc.

· I have named some of the trades or callings taxed by the sections
to show that there has been no effort to collect them into classes by
reason of kinship or similarity of methods, but that they are indis-
criminately named—ordinary trades, manufacturings of all sorts,
amusements, telegraphing, steamboats, etc., etc.; from the man who
operates the shoot-the-chutes to the sugar refiner; from the under-
taker to the steamboat company; from the distillery to the water-
works; from the livery stable to the telegraph and telephone; from
the bill-poster to the master builder.

Manifestly, this collection or enumeration of so many callings so
totally different in nature from each other, in any single one of said
Sections 10, 11, 12 or 14, shows that the Legislature laid no stress
upon and attached no importance to the naming of any one business
in any one section; that it had no purpose to group the various call-
ings into classes, where all would be similar in the general line of
business operations, but that its one object, as expressed in the title,
was to name every business and every calling from the highest to the
lowest and to levy a license tax upon it.

Inasmuch as this is the plain import of the act, taken as a whole
or entire statute, it is manifest that little significance is to be attached
to its subdivisions into sections, for each and every section relates to
a liense tax on trade or business.

Bearing this in mind, we are prepared to test the validity of the
Act 103 of 1900 on the issue of its constitutionality raised by the
defendant company. The title of this statute is: 'An act to amend
and re-enact Sections 10, 12 and 14 of Act No. 171 of 1898, entitled,
'An act to levy, collect and enforce payment of an annual tax upon
all persons, etc., pursuing any trade, profession, vocation, calling or
business,' etc., etc., the title of Act 171 of 1898 being copied entire
in the title of Act 103 of 1900.

As the title of Act 103 does not name *Section 11* of Act 171 of
1898 and as *sugar refineries* are named in the Section 11 *of the Act
of 1898* and are not referred to in Sections 10, 12 or 14 of said Act
of 1898, and as Act 103 of 1900 *adds* to its re-enactment and amend-
ment of *Section 10* these words: ' Provided, further, that for carry-
ing on the business of refining sugar and molasses the annual state
license shall be one-eighth of one per cent. upon the gross annual
receipts of said business,' the defendant contends that this proviso,
not being germane to any of the subjects of license taxation, referred

to in either Section 10, 12 or 14, which are the only section of Act 171 of 1898 referred to in the title to Act 103 of 1900, therefore an object not referred to in the title of the amendatory act, is included in its body, and therefore it has no effect under said Article 31 of the Constitution.

The argument is ingenious, but it is not sound. The power of the Legislature to re-enact or to amend or to repeal cannot be questioned. It had power to change the license tax law of 1898. It had power to re-arrange the sections of that law as it saw fit; there was nothing to prevent its adding to its amendment of Section 10 the proviso in regard to the license tax on sugar refineries. In doing this it was not obliged to refer in the title of the amendatory act to Section 11 of the act amended merely because it happened that in said Section 11 sugar refining was named along with a dozen other trades or callings on which a license tax was laid. The effect of the proviso added to the amendment of Section 10 was to take sugar refining from the classification fixed by Section 11 and to fix for it a new method of grading and and a license tax different in amount. But the sole effect of this act is a license tax on business callings and professions, and it is of no moment that in dealing with this general and only object the Legislature saw fit to transpose the provision relating to sugar refining as a business subject to license taxation from Section 11 to Section 10 of the Act of 1898 as amended. The general object and the sole object of the Act of 1898 and of the amendatory Act of 1900 was a license tax on professions and trades and business, and as the object is stated in the title of both acts, it seems to me that reference to particular sections is of secondary consideration. It purports to amend Sections 10, 12 and 14, and because in amending them it provides a different license tax for sugar refining as a business from that fixed by Section 11 of the amended act makes no difference, because the one object of the amendatory, as well as of the amended act, was the license taxation of business, and that object is specified in both titles. Sugar refining is a business, and, therefore, without special mention in the title, it may be subjected to the license tax under the one object stated therein.

The amendatory act supplements and changes the amended act, and we read the two as one whole. The proviso of the Act of 1900 in regard to sugar refining takes the place of the classification and tax provided by the Act of 1898, for this proviso is the last expression of the legislative will.

In amending the sections referred to in its title, it adopts the proviso, it being an amendment, but the proviso refers to no subject except a license tax on business. All of these sections, 10, 11, 12 and 14, relate to that one subject, *i. e.*, the license tax on business and the titles of both acts state this as the one object of both laws.

Indeed, all the thirty-one sections of the act relate to this one subject. They are only clauses or paragraphs of the entire act. They are subdivisions of the text put in for mere convenience, and the numerical designation of each and every section could be stricken out without having the slightest effect upon the law itself. The insertion, therefore, of numerical designation for the several paragraphs of the entire text of this law was mere surplusage, the presence of which or the absence of which has or can have no possible influence upon the declarations or directions of the law itself.

Therefore it seems to me when the title of the Act 103 of 1900 announces that its object was to amend and re-enact certain enumerated sections of the Act 171 of 1898, that this was equivalent to the announcement that the general license law was to be amended, and was ample notice to the people and to all concerned, and these meet all the essential requirements of Article 31 of the Constitution.

The question here is not complicated by any issue of repeal by implication, for the amendatory act contains a clause which expressly repeals all laws or parts of laws contrary to its provisions.

Counsel of defendant say: 'We do not contend there is anything contained in the title of the Act of 1900 which is not contained in the original act. The title of the act meets all the constitutional requirements; it has but one object, and that object is embraced in its title, and so long as the General Assembly confined itself to the object and purpose set forth in the title, the act is legal and constitutional. But when the Legislature went beyond the object expressed in the title and attempted to do indirectly what it could not do directly under the title of the act; that is, deal with the subject-matter contained in Section 11, it acted beyond the scope of the object expressed in the title of the bill. There was no attempt to amend Section 11, but it is equally true that Section 11 was amended; there was no direct amendment but what was done directly, but was sought to be done indirectly. The object of the act as expressed in its title was to amend Sections 10, 12 and 13 of the Act of 1898. Sugar refining was grouped or classified under Section 11. The trades, callings, voca-

tions or professions embraced in Sections 10, 12 and 14 were in no sense akin or germane to the subject of sugar refining. It is indisputable that while Section 11 is not mentioned in the title, nor in the object of the bill, yet that section was amended, so far as it dealt with refiners of sugar, and is repealed *pro tanto* by the Act of 1900. Can the act, then, which in its title purports to amend certain sections of a general law, and enumerating those sections, go beyond what is germane or cognate to the objects and purposes of those sections and incorporate objects embraced in other sections, which are not akin to the subject-matter of the sections set out in the title? We think not? If Section 11 could not have been amended specially and *eo nomine* under the title of this act, can the constitutional requirements be successfully evaded by doing indirectly what could not have been done directly? If so, there are no limitations or restrictions to be placed upon the General Assembly in including the object of legislation in the bill. The General Assembly grouped into different classifications and under different sections the various callings, trades, etc., and fixed an annual maximum and minimum license to be paid by each upon its gross receipts, and in that classification saw fit to place the sugar refining business under Section 11, and any effort on the part of the General Assembly to change or modify the tax provided for in that section should have been included in the title of the bill for that purpose, and, as sugar refiners found their classification under that section, any bill which sought to add to or take from their rights or liabilities under this section and canceled that fact by a title to amend different section or sections of the bill would be grossly misleading and deceptive, and should not be tolerated as legislation such as Article 31 of the Constitution contemplates.' "

### OPINION.

The arguments urged and the authorities cited by both parties to this important litigation have received our most thoughtful consideration. Act No. 171 enacted by the General Assembly in 1898 was a general license law to levy, collect and enforce an annual license law upon all persons or corporations or business firms pursuing any calling or business, except those expressly excepted from such tax by Article 229 of the Constitution. Various occupations were placed in groups in different sections of the law, and for each group a common classification was established and a specific license was imposed upon

each one of the parties engaged in the particular business according to the particular class of the group into which his own case might fall. When this act was passed the general public and each person pursuing any of the businesses mentioned therein were advised of the exact situation and placed in position to take steps to thereafter maintain, alter or repeal the act as the different interests might be affected.

The general public and each individual concerned was called upon to watch subsequent legislation concerning licenses.

If the title of a proposed law should give notice of an intention to amend or repeal generally the preceding act, every interest involved should be placed upon the alert and warned of a possible injurious change in the law. If, however, the title of the proposed law should give notice of an intention to simply amend a particular section of the bill, then all parties other than those interested in the subject-matter contained in that particular section would be thrown off their guard, and, being led to believe they had no interest in the new statute, would take no steps looking to their own protection. If, under the title of a bill to amend simply Section 1 of a given law, which section affects only specified persons, or deals with a particular subject, distinct matters which are contained in and specially provided for in another section and which concerned different sets of persons could, after being dealt with differently from what they were in their proper section, be transported over and inserted into "Section 1" as so altered, the parties concerned in this change might be greatly deceived and ruined without their knowledge. The very object of Articles 31 and 32 of the Constitution is to prevent this result.

The General Assembly has the right to make the title of an amendatory act as sweeping and general as it thinks proper, and, having done so, to take general action under the title, provided it keeps within it and deals with but one object; but, when it restricts the title and announces its purpose to deal with the original bill in respect only to particular matters therein, it is bound to govern itself accordingly and keep within what it had itself declared would be the limits of its proposed action. (Sutherland Stat. Const., Secs. 87-102. Cooley's Constitutional Limitations, pages 171, 172.)

The same rule and reasons which prevent the General Assembly, in enacting a general law on a particular subject, from inserting in the body of the law additional subjects not covered by the title, prevent that body, when it enacts a law directed by its title specially

to the amendment of a particular section of a law (that is, to the alteration of the particular matters contained in that section), from throwing for the first time into that section distinct matters not included in it before the amendment, when the matters so thrown in are, after being altered, those which had been specially and otherwise provided for in another section of the same law. As the General Assembly, in a law purporting to deal generally by amendment with a pre-existing law, has to keep inside of the objects provided for in the original law, so it has in a law purporting to deal with a special section to keep within the things provided for in that section. It is not sufficient that these things should have been able to have been classed as matters falling legally and properly under the general title of the original law. It may be that a particular section of a law may by amendment be broadened so as to bring within its provisions some particular matter which could logically and legally have been placed 'in it originally, but this matter must be something which had not already been provided for in another section of the .same statute which was proposed to be amended.

In *Dolese vs. Pierce,* 124 Ills. 140, the court said: "An act to amend certain sections of a general law is limited in its scope to the subject-matter of the section proposed to be amended. In such case the introduction of any new substantive matter not germane or pertinent to that contained in the original sections cannot be regarded as an amendment thereto, but must be regarded as independent legislation upon a matter not *expressed in the title of the act,* and, therefore, void. The amendment of an act in general or a particular section of an act *ex vi termini* implies merely a change of its provisions upon the same subject to which the act or section relates."

This same general principle, in different forms and language, is to be found in numerous decisions of the Supreme Courts of other states of the Union having constitutional provisions similar to our own on this subject.

See *ex parte* Couvert (Ala.), 9 Southern, 227; *Ex parte* Henlett, 22 Nevada, 333; Trumble vs. Trumble, 37 Nebraska, 340 (55 N. W., 869, 870); State vs. Bankers & Merchants Mutual Benefit Association, 23 Kansas, 502; Chiles vs. Monroe, 4 Metc. (Ky.), 72; Board of Commissioners vs. Aspen M. & S. Co., 3 Colo. App. Rep., 223, (32 Pac.), 717-718; People vs. Fleming, 7 Co., 230 (3 Pac. 70); Miller vs. Hur-

ford, 11 Neb. 377 (9 N. W. 477); State vs. Carroll, 54 Neb. 72 (74 N. W. 432, 434); State vs. Tibbetts, 52 Neb. 228 (71 N. W. 990); State vs. South Ry. Co., 115 Ala. (22 Smith, 589-591); Armstrong vs. Mayer (Neb.) (83 N. W. 401); State vs. Ferguson (28 Smith, 918).

In the case at bar we find that sugar refining was placed by the Legislature of 1898 in the 11th Section of Act No. 171 in a group of occupations classified for license purposes into twenty sections, the first class being of those whose gross receipts were two million five hundred thousand dollars and over, and the license fixed at six thousand two hundred and fifty dollars, and the 20th section being of those whose gross receipts were fifteen thousand dollars, and the license fixed at twenty dollars, while the 10th section of the Act of 1898 enumerated three distinct groups of occupations and divides each group into classes, providing a specific license for each class.

The occupations named in the second of these groups were: "Persons doing a storage business of sugar and molasses exclusively, or either of them." These occupations were divided into nine classes, the first class being of those whose gross receipts were twenty thousand dollars whose license was fixed at one thousand dollars, and the ninth class being of those whose receipts were less than three thousand dollars, whose license was fixed at seventy-five dollars. In the 10th section as amended this second group remained unchanged as to classification and license, but at the close of the section are found the words, "Provided, further, that for carrying on the business of refining sugar and molasses or either of them the annual State license shall be one-eighth of one per cent. upon the gross annual receipts of such business."

It will be seen that "the business of refining sugar and molasses" was transported *out of Section 11* of the Act of 1898 in to *Section 10* of that act, but that it was not placed into any of the groups therein contained nor under the classification of any of these groups, but it made its appearance in the section as an independent business specially provided for therein, without any express classification, but with the license fixed for any one pursuing the same "at one-eighth of one per cent. upon the gross receipts of such business." The original group with which it was thus connected remained after the proviso was placed in the section just as it was before. Its insertion was really not so much an amendment of the section as an "addition" to it.

It will be seen that this matter is inserted into Section 10 under the form of a "proviso." As there is nothing in the section preceding the "proviso" with which it has any proper connection or relation, we think there must have been some error made in the title to the bill, or in placing this "proviso" in the place where we find it. In construing a law of Nevada, the Supreme Court of that State, comparing its title, which declared it to be "An act to amend Section 2 of another act with what was contained in the body of the two acts," said: "It appears that Section '1' was the section they really wished to amend, but as the title stated that it is an act to amend Section 2 of the former act and the body of the act repeats that statement, we are of the opinion that it must be taken just as it reads, although it would seem that a mistake had been made." (*Ex parte* Henlett, 22 Nevada, 234.)

We do not think the proviso in question logically belongs or was intended to belong or can legally be placed where it is, nor that we can carry it over and back into Section 11 under the title to this amendatory act. We are forced therefore to sustain defendant's claim that said proviso is unconstitutional, null and void, and we so hold, adjudge and decree.

The demand of the State against defendant for a license based upon said proviso having no legal foundation upon which it can rest, it must be rejected and the State's demand be dismissed.

The conclusions we have reached on that question make it unnecessary for us to pass upon the other issues raised by the pleadings.

For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered and adjudged that plaintiff's demand be rejected and its suit dismissed.

## ON APPLICATION FOR REHEARING.

BLANCHARD, J. The plaintiff proceeded under Section 1 of Act 103 of 1900 against defendant for a license tax for the year 1901.

Defendant pleaded the unconstitutionality of that part of Section 1 of the act aforesaid which purported to authorize the proceeding taken by the plaintiff. This court sustained the plea of unconstitutionality, reversed the judgment appealed from and rejected the plaintiff's demand. In doing so, the court did not pass or intend to pass upon any of the other defenses raised in the case.

In its application for rehearing the plaintiff urges that if that part of the statute of 1900, under which it took action, be unconstitutional, there is another statute under which defendant is liable for a license tax for 1901, and prays the court to so hold and to decree against defendant a judgment for a license tax under the other law, and to this end to grant a rehearing.

If there be another statute under which defendant owes a license tax for the year 1901, let a new proceeding be taken by the State setting the same up, and its right so to do, as well as the right of defendant to resist the same by all legal pleas and defenses is reserved.

To this extent the decree heretofore handed down is modified and amended.

Rehearing refused.