

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable W. A. Davis
State Registrar
Texas State Board of Health
Austin, Texas

Dear Sir:

Opinion No. O-5189
Re: Constitutionality of the
provision of House Bill
No. 197, 48th Legislature,
Regular Session, relating
to the recording and certi-
fication of illegitimate
births.

You have requested the opinion of this department on six questions relating to the registration of illegitimate births. We quote from your letters:

"In an Amendment to H. B. 614, (1939), known as H. B. 197, (1943), is found the expression, 'No prescribed form for recording birth certificates shall indicate that any birth recorded or certi- fied was illegitimate.'

"Please advise me:

"(1) Does that provision apply to certifi- cates filed under the provisions of any other than Sec. 18 of the Vital Statistics Law? (Rule 51a, Art. 4477, R. C. S.)

"(2) Is that provision retroactive, and does it apply to a birth registered prior to the pass- age of H. B. 197?

"(3) Should the County Judge, in considering a certificate filed under the provisions of Sec. 18, as amended, (1943), ascertain whether the child was or was not legitimate prior to the approval of the certificate?

Honorable V. A. Davis, page 2

"(4) Would the provisions of this Amendment be violated if the item of legitimacy be marked out on the present form and used for the registration of an illegitimate birth.

"(5) Since more than 95% of the births that are registered are legitimate, would a birth certificate upon which no statement of the legitimacy appeared indicate that the birth was illegitimate?"

(6) "Should a birth record which does not make any statement as to the legitimacy of the child, and no name or other items identifying the father, be accepted by the County Court, and if accepted by the Court and forwarded to the State Bureau, should a certified copy of that record be issued when ordered by a District Court?"

We believe that that portion of House Bill No. 197 of the Regular Session of the 48th Legislature, quoted by you, is so clearly unconstitutional as to render useless any answer to your questions relating to its application.

Prior to the passage of this Act, the only provision of the Vital Statistics Law of Texas containing any restriction comparable to the one quoted by you was as follows:

"Neither the State Registrar nor any local registrar shall issue a certified copy of any birth or death certificate wherein a child or an adult is stated to be illegitimate, unless such certified copy is ordered by a court of competent jurisdiction." (Article 4477, Rule 47a (25), V.A.C.S.)

But this new provision goes much farther, and even prohibits any indication of illegitimacy in the record itself.

Section 35 of Article III of the Constitution of Texas provides:

"No bill . . . shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

Honorable W. A. Davis, page 3

The title of said House Bill 197 is as follows:

"AN ACT to amend Section 18, Chapter 41, Acts of the First Called Session of the Fortieth Legislature, as amended by Section 2, House Bill No. 614, Acts of the Regular Session of the Forty-sixth Legislature, as amended by Section 1, House Bill No. 974, Chapter 564, Acts of the Regular Session of the Forty-seventh Legislature, as amended by Section 1, House Bill No. 624, Chapter 525, Acts of the Regular Session of the Forty-seventh Legislature, so as to provide for uniform fees to be charged for the issuance of delayed birth and death certificates by the Probate Court, Clerk thereof, and the State Registrar; and to provide that any citizen of Texas wishing to file the record of any birth or death occurring inside the State of Texas not previously registered, may submit such record to the Probate Court in the county where such birth or death occurred; to provide any citizen of the State of Texas wishing to file the record of any birth or death occurring outside the State of Texas not previously registered may submit such record to the Probate Court in the county where he resides; and declaring an emergency."

It will be noted that, while this title goes beyond a mere statement of a purpose to amend the previous acts of the Legislature named therein, and attempts to specify the things for which it provides, yet it is not so written as to put a legislator on notice that one of the specific provisions of the Act (and one new to the law of Texas) prohibits the use of a form for recording births which may indicate that any such birth was illegitimate.

In our Opinion No.O-23, we held unconstitutional an act which provided for the payment of half-fees to "officers and witnesses" in certain misdemeanor cases, because the title of the Act stated only that it related to fees paid "constables." That opinion, and the authorities therein cited, are so applicable to the instant case, that we take the liberty of quoting from it at length:

Honorable W. A. Davis, page 4

> ". . . .

> "It has been consistently held by all of our appellate courts that a title or caption expressing a purpose to amend a statute in a certain particular is deceptive and misleading in so far as the body of the act purports to amend the prior law in other particulars. 39 Tex. Jur. 104. While it is true, as stated in paragraph 48, p. 102 of 39 Tex. Jur.: 'The title of an amendatory act is ordinarily sufficient to allow any amendment germane to the subject of the original statute, if it properly specifies the chapter and section, or the revision and article, to be amended;' the same authority further states the law:

> "'<u>Specification of field of amendment</u>.-
> "'In addition to the statement of a purpose to amend a given law or provision, a <u>title may specify the nature of the amendment and when it does so the body of the act must conform</u>.'

> "Among the many cases cited in support of the text is to be found the case of Katz vs. State, 54 SW (2nd) 130. In that case, the caption reads as follows:

> "An act to amend Section 14, Article 7047, of the Revised Civil Statutes of 1925, <u>relating to</u> and imposing an occupation tax on money lenders and defining same and providing for certain exceptions, and declaring an emergency.'

> "The body of the bill proposed to place a tax on money lenders, but the section of the statute to be amended was one taxing 'loan brokers'. The court held the amendatory act void. In the course of the opinion othe court said:

> "'In stating the principles from which it may be determined whether the title to a bill meets the requirement of section 35, Article 3, of the Constitution, we are not to be understood as holding that the title of an act amendatory of an article in a code, such as our Revised Statutes, is insufficient if it does no more than refer to the code

Honorable W. A. Davis, page 5

and the number of the article therein. The courts
of this state have held that a reference to a num-
ber of an article in a code, such as our Revised
Statutes, is sufficient in the title of an act
amendatory thereof, to allow any amendment germane
to the subject treated in the article referred to.
English & Scottish-American Mort. & Inv. Co. v.
Hardy, 93 Tex. 289, 55 SW 169; State v. McCracken,
42 Tex. 384. The reason for the holding appears
to be that the naming of the article to be amend-
ed directs attention to all of the provisions
therein, as the subject of the amending act, and
that such provision can be ascertained by read-
ing the article to be amended. However, when the
Legislature restricts the title of an amendatory
act by reference to the number in the code of the
article amended, and announces its purpose to deal
with the original bill in respect to particular
matters therein it is bound to govern itself ac-
cordingly, and keep within what itself declared
would be the limits of its proposed action. Suther-
land Statutory Construction (2d Ed.) Vol. 1, Sec.
139; State vs American Sugar Refining Co., 106 La.
553; 31 So. 181, 186.'

"   . . . .

"The true rule in such cases as we have here
presented is succinctly stated in Texas Jurisprud-
ence, as follows:

"'Whether a title is comprehensive or restrict-
ed, expressed in general terms or with particular-
ity, it must be in agreement and conformity, and
not at variance, with the subject of the legisla-
tion. . . . A title is deceptive, false or mis-
leading if it disguises the true purpose of the
act and imports a subject different from that to
which the act relates, and whether or not a title
states the general purpose of the act, it is mis-
leading if it states specific purposes in such
manner as to conceal other purposes not stated.'

"(39 Tex. Jur. 100, citing Bitter v. Bexar
County, 11 SW (2d) 163, and other cases.)

Honorable W. A. Davis, page 6

"The original opinion in the case of Ex parte Heartsill, 38 SW (2d) 803, held the attempted amendatory act invalid, and on subsequent motions for rehearing all members of the court expressed themselves.  Said the court through Judge Lattimore:

"'All laws passed by the Legislature of this State originate in bills, upon each of which must appear a caption or title, and Section 35, Art. 3 of our Constitution forbids that any bill, with certain exceptions, shall contain more than one subject, which shall be expressed in its title. It has been held by the courts that when the express verbiage of such title limits and restricts the purpose of the bill, any attempt to legislate otherwise in such bill variant from the purpose prescribed, is in excess of the legislative power, and that a law subject to this complaint is unconstitutional.'

"The caption of the amendatory act here under consideration indicated the purpose of the bill related to one single thing, i.e., to the fees paid constables.  The framers of the bill thus informed the public and their fellow legislators that the purpose of the bill was to affect the fees of constables only.  In the body of the bill substantial changes were made affecting all fee officers.  All of them would be entitled to half their costs in all their misdemeanor cases, except those dismissed, and same would be paid by the various counties, unless paid by the defendants.

"The Supreme Court in the case of Ward Cattle & Pasture Co. v. Carpenter, 200 SW 521, wherein an act of the Thirty-Third Legislature (1913) was involved, refused to sanction an amendment to Article 7235, R. C. S., excluding Matagorda County from a list of enumerated counties entitled to invoke the stock law.  Such act omitted Matagorda County under a caption including othernamed counties.  Chief Justice Phillips used the following language:

Honorable W. A. Davis, page 7

"'The purpose of the constitutional provision in respect to the title of legislative acts is well understood. It is that by means of the title the legislator may be reasonably apprised of the scope of the bill so that surprise and fraud in legislation may be prevented. True, according to previous decisions of this court, if the title had only declared that the purpose of the act was to amend article 7235 of the Revised Statutes, it would have supported an act amending the article so as to omit Matagorda County. But with this title announcing, as it does, that the article was to be amended in a particular way, no legislator would reasonably have conceived that it was to be amended in another way exactly contrary to that stated. This is a case illustrating the wisdom and justice of the constitutional provision.'

"For additional cases and authorities on this proposition, see:

"Sutherland on Statutory Construction (1st Ed.) Sec. 90, p. 99.
"39 Tex. Jur., Sec. 48, p. 102, et seq.
"Holman v. Cowden & Sutherland (Civ. App.) 158 SW 571 (writ of error refused)
"Burnett v. State, 42 SW (2d) 1107
"Hamilton v. Railway Co., 283 SW 475
"Arnold v. Leonard, 273 SW 799
"Bitter v. Bexar County (Tex. Comm. App.) 11 SW (2d) 163
"Gulf Production Co. v. Garrett (Tex. Comm. App.) 24 SW (2d) 389.

". . . .

"The title of a statute has no enacting force. When the body and the title are in conflict, the latter must yield. . . ."

In view of the above rules, therefore, it is our opinion that that part of said House Bill No. 197 which provides that "no prescribed form for recording birth certificates

Honorable W. A. Davis, page 8

shall indicate that any birth recorded or certified was il-
legitimate" is invalid, having been passed in contravention
of Section 35 of Article III of the Texas Constitution.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

W. R. Allen
Assistant

WRA:db